# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP1206-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Respondent, |
| | v. |
| | Emmanuel Earl Trammell, |
| | Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 382 Wis. 2d 832,917 N.W.2d 233
(2018 – unpublished)

| | |
|---|---|
| OPINION FILED: | May 31, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 26, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Jeffrey A. Wagner |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | DALLET, J. concurs, joined by A.W. BRADLEY, J. (opinion filed). |
| DISSENTED: | |
| NOT PARTICIPATING: | ABRAHAMSON, J. did not participate. |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed by *Urszula Tempska* and *Law Office of U. Tempska*, Shorewood. There was an oral argument by *Urszula Tempska*.

For the plaintiff-respondent, there was a brief filed by *Tiffany M. Winter*, assistant attorney general, with whom on the brief is *Joshua L. Kaul*, attorney general. There was an oral argument by *Tiffany M. Winter*.

An amicus curiae brief was filed on behalf of Wisconsin Association of Criminal Defense Lawyers by *Ellen Henak* and *Henak Law Office*, *S.C.*, Milwaukee.

An amicus curiae brief was filed on behalf of Wisconsin State Public Defender by *Jefren E. Olsen*, assistant state public defender, with whom on the brief was *Kelli S. Thompson*, state public defender.

**2019 WI 59**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP1206-CR
(L.C. No. 2015CF3109)

STATE OF WISCONSIN       :       IN SUPREME COURT

**State of Wisconsin,**

    **Plaintiff-Respondent,**

    **v.**

**Emmanuel Earl Trammell,**

    **Defendant-Appellant-Petitioner.**

**FILED**

**MAY 31, 2019**

Sheila T. Reiff
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of an unpublished, per curiam decision of the court of appeals, State v. Trammell, No. 2017AP1206-CR, unpublished slip op. (Wis. Ct. App. May 8, 2018), affirming a jury verdict convicting Emmanuel Earl Trammell ("Trammell") on one count of armed robbery and one count of operating a vehicle without the owner's consent, and affirming the Milwaukee County circuit court's order denying Trammell's motion for postconviction relief.[1] Though he failed to object at the jury instruction and verdict conference as

---

[1] The Honorable Jeffrey A. Wagner presided.

required by Wis. Stat. § 805.13(3) (2015-16),[2] Trammell claims that Wis JI—Criminal 140 (2017)[3] unconstitutionally reduced the State's burden of proof, and confused and misled the jury such that he should be entitled to a new trial. Lastly, Trammell alternatively claims that discretionary reversal is warranted under Wis. Stat. § 751.06.

¶2   We conclude that Trammell waived his right to object to the use of Wis JI—Criminal 140 by failing to object to its use at the jury instruction and verdict conference, pursuant to Wis. Stat. § 805.13(3). On that basis, the court of appeals properly denied Trammell's appeal and correctly concluded that it could not consider whether Wis JI—Criminal 140 misstates the law, confuses the jury, and reduces the State's burden. However, unlike the court of appeals, this court may nonetheless consider the instruction under its discretionary power of review. State v. Schumacher, 144 Wis. 2d 388, 409-10, 424 N.W.2d 672 (1988). We exercise that power here. The constitutional question with which we are presented is whether there is a reasonable likelihood that the jury understood the instructions to allow a conviction based upon insufficient proof. We conclude that Wis JI—Criminal 140 does not unconstitutionally reduce the State's burden of proof below the

---

[2] All subsequent references to the Wisconsin Statutes are to the 2015-16 version, unless otherwise indicated.

[3] All subsequent references to Wis JI-Criminal 140 are to the 2017 version, unless otherwise indicated.

reasonable doubt standard. Lastly, we conclude that discretionary reversal under Wis. Stat. § 751.06 is not warranted. We therefore affirm the court of appeals.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶3 Trammell was arrested on July 8, 2015, after stealing a car from a convenience store parking lot while armed. On July 10, 2015, the State charged Trammell with one count of armed robbery and one count of operating a motor vehicle without the owner's consent. Trammell entered a plea of not guilty.

¶4 Prior to trial, Trammell submitted a list of proposed jury instructions pursuant to the circuit court's scheduling order. Included in the list of proposed jury instructions was Wis JI—Criminal 140 titled, "Burden of Proof and the Presumption of Innocence."[4]

---

[4] Wisconsin JI-Criminal 140 states as follows:

> In reaching your verdict, examine the evidence with care and caution. Act with judgment, reason, and prudence.

> Presumption of Innocence

> Defendants are not required to prove their innocence. The law presumes every person charged with the commission of an offense to be innocent. This presumption requires a finding of not guilty unless in your deliberations, you find it is overcome by evidence which satisfies you beyond a reasonable doubt that the defendant is guilty.

> State's Burden of Proof

> The burden of establishing every fact necessary to constitute guilt is upon the State. Before you can return a verdict of guilty, the evidence must satisfy

(continued)

¶5 A two-day jury trial commenced on April 4, 2016. During testimony, the victim identified Trammell in court and testified that on July 8, 2015, the victim and his girlfriend drove to a convenience store in his mother's Buick Regal. The victim testified that he went into the store while his girlfriend waited in the Buick. He testified that while he was in the store, Trammell approached him and patted him down, telling the victim that he was looking for a gun. The victim

---

you beyond a reasonable doubt that the defendant is guilty.

Reasonable Hypothesis

If you can reconcile the evidence upon any reasonable hypothesis consistent with the defendant's innocence, you should do so and return a verdict of not guilty.

Meaning of Reasonable Doubt

The term "reasonable doubt" means a doubt based upon reason and common sense. It is a doubt for which a reason can be given, arising from a fair and rational consideration of the evidence or lack of evidence. It means such a doubt as would cause a person of ordinary prudence to pause or hesitate when called upon to act in the most important affairs of life.

A reasonable doubt is not a doubt which is based on mere guesswork or speculation. A doubt which arises merely from sympathy or from fear to return a verdict of guilt is not a reasonable doubt. A reasonable doubt is not a doubt such as may be used to escape the responsibility of a decision.

While it is your duty to give the defendant the benefit of every reasonable doubt, you are not to search for doubt. You are to search for the truth.

stated that after not finding a gun, Trammell snatched money from the victim and asked him whose car he came in. The victim testified that he told Trammell the Buick belonged to his mother. The victim tried to stop Trammell but Trammell brandished a gun, got in the driver's seat of the Buick, and drove away. The other two individuals with Trammell drove away in another car. The victim's girlfriend's testimony corroborated the victim's recollection of events.

¶6 The State also called Officer Steven Strasser of the Milwaukee Police Department ("Officer Strasser") to testify. Officer Strasser testified that he heard a dispatch that OnStar[5] had located the Buick and that police were pursuing it. Officer Strasser stated that he joined the pursuit, and that the Buick was ultimately stopped when police requested OnStar to cut off the ignition in the vehicle. He testified that three individuals exited and were arrested. He stated that police identified the driver as Gabarie Silas ("Silas"), and that Trammell was nowhere to be found.

¶7 The State also called Silas, who had entered into a plea agreement, to testify. Silas testified that on July 8, 2015, he rode to the convenience store in a Dodge Stratus with

---

[5] "OnStar" is a General Motors product that provides customers with subscription-based services, including emergency services, roadside assistance, navigation, remote diagnostics, and in-vehicle security features. See OnStar, Plans and Pricing, https://www.onstar.com/us/en/plans-pricing/compare-plans/ (last accessed Apr. 24, 2019).

Trammell and another individual. Silas also corroborated the victim's testimony regarding what transpired at the convenience store. He stated that once the victim's girlfriend was out of the car, Trammell threw Silas the keys to the Dodge. Silas drove away in the Dodge as Trammell took the Buick. Silas testified that he and Trammell later switched cars. He further testified that he understood the incident involved a gun that Trammell provided to the victim but for which the victim never paid Trammell. Silas said that Trammell intended to return the car to the victim once Trammell and the victim settled the outstanding debt.

¶8 Officer Eric Draeger of the Milwaukee Police Department ("Officer Draeger") also testified for the State. Officer Draeger stated that he monitors all jail telephone calls, and that on January 6, 2016, he listened to a call Trammell made to a friend, during which Trammell asked her to offer false testimony at Trammell's trial.

¶9 Moreover, pursuant to a stipulation with Trammell's trial counsel, the State informed the jury that a forensic examiner identified two fingerprints lifted from the Buick as Trammell's left index finger and Silas's left middle finger. Trammell chose not to testify at trial.

¶10 At the close of evidence, the parties and the circuit court conducted a jury instruction and verdict conference as required by Wis. Stat. § 805.13(3). The circuit court indicated that it intended to give the standard burden-of-proof instruction, Wis JI—Criminal 140, which Trammell had

6

specifically requested. Trammell did not object to the instruction, nor did he request that the instruction be modified in any way. Prior to closing arguments, the circuit court instructed the jury on the burden of proof using Wis JI—Criminal 140.

¶11 The jury convicted Trammell of both armed robbery, party to a crime, and operating a motor vehicle without the owner's consent, party to a crime. On May 17, 2016, Trammell was sentenced to 12 years in prison and 8 years of extended supervision on count one. He was further sentenced to 15 months in prison and 15 months of extended supervision on count two, running concurrently with the sentence on count one.

¶12 On April 10, 2017, Trammell filed a motion for postconviction relief in the circuit court. Trammell claimed that Wis JI—Criminal 140 "misstated the law, confused the jurors, and caused Trammell to be convicted based on a burden of proof lower than the constitutionally-required 'beyond reasonable doubt' standard." In support of his position, Trammell cited two law review articles written by the same two authors——one which was released shortly after Trammell's conviction, and one which was, at the time, set to be released in 2017.[6] Each law review article was based on separate but similar studies which the authors conducted. The authors opined

---

[6] Michael D. Cicchini & Lawrence T. White, Truth or Doubt? An Empirical Test of Criminal Jury Instructions, 50 U. Richmond L. Rev. 1139 (2016); Michael D. Cicchini & Lawrence T. White, Testing the Impact of Criminal Jury Instructions on Verdicts: A Conceptual Replication, 117 Columbia L. Rev. Online 22 (2017).

7

that when jurors are instructed to "search for truth," significantly higher conviction rates result. Trammell acknowledged that "[t]he jury instructions given in this case were subject to a jury instructions conference and were given with both parties' agreement and no objections." While this would seemingly constitute waiver under Wis. Stat. § 805.13(3), Trammell nevertheless sought a new trial both in the interest of justice and due to plain error. The State argued that Trammell waived his right to object to the jury instruction by operation of § 805.13(3), and that the jury instruction did not mislead or confuse the jury or reduce the State's burden of proof.

¶13 On April 14, 2017, the circuit court issued a written order denying Trammell's motion for postconviction relief. The circuit court noted that Wis JI—Criminal 140 "was formulated and approved by Wisconsin's Jury Instruction Committee," and stated that "[a]lthough the studies performed by Cicchini and White make for interesting reading, the court is bound by the standard jury instruction implemented by the Jury Instruction Committee which has been accepted for years by Wisconsin's appellate courts." The circuit court therefore declined to grant Trammell a new trial due to any purported plain error and rejected Trammell's argument that Wis JI—Criminal 140 "prevented the true controversy from being fully tried."[7]

---

[7] The circuit court did not address whether Trammell waived his objection to the use of Wis JI—Criminal 140 due to his failure to object at the jury instruction and verdict conference pursuant to Wis. Stat. § 805.13(3).

8

¶14 Trammell appealed. On May 8, 2018, the court of appeals issued a per curiam opinion affirming the circuit court. The court of appeals first concluded that Trammell waived his right to object to the jury instruction pursuant to Wis. Stat. § 805.13(3) by failing to object at the jury instruction and verdict conference, and that the court of appeals lacked authority to disregard waiver of a jury instruction objection. Trammell, No. 2017AP1206-CR, unpublished slip op., ¶¶11-13. Second, the court of appeals concluded that even if it could overlook Trammell's failure to object, the outcome was controlled by this court's holding that Wis JI—Criminal 140 was constitutional in State v. Avila, 192 Wis. 2d 870, 532 N.W.2d 423 (1995) overruled on other grounds by State v. Gordon, 2003 WI 69, 262 Wis. 2d 380, 663 N.W.2d 765. Trammell, No. 2017AP1206-CR, unpublished slip op., ¶¶14-17. Third, the court of appeals rejected Trammell's arguments that a new trial was warranted in the interest of justice or due to plain error. Id., ¶¶18-20.

## II. STANDARD OF REVIEW

¶15 We will address four issues: (1) whether Trammell waived his challenge to the use of Wis JI—Criminal 140; (2) whether Wis JI—Criminal 140 misstates the law so to confuse and mislead the jury thus requiring us to overrule Avila; (3) whether Wis JI—Criminal 140 is otherwise constitutionally infirm; and (4) whether discretionary reversal is warranted under Wis. Stat. § 751.06.

9

¶16  This court reviews questions of waiver de novo.  State v. Kelty, 2006 WI 101, ¶13, 294 Wis. 2d 62, 716 N.W.2d 886. Additionally, "[w]hether a jury instruction from the circuit court deprives a defendant of his right to due process is a question of law, which we review de novo."  State v. Tomlinson, 2002 WI 91, ¶53, 254 Wis. 2d 502, 648 N.W.2d 367 (citing State v. Kuntz, 160 Wis. 2d 722, 735, 467 N.W.2d 531 (1991)).  Lastly, "[u]nder Wis. Stat. § 751.06, we have independent discretionary authority to reverse a conviction and order a new trial where 'it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried.'"  State v. Langlois, 2018 WI 73, ¶55, 382 Wis. 2d 414, 913 N.W.2d 812 (quoting § 751.06).  "The interpretation and application of a statute present questions of law that we review de novo."  Id. (citing Estate of Miller v. Storey, 2017 WI 99, ¶25, 378 Wis. 2d 358, 903 N.W.2d 759).

### III.  ANALYSIS

#### A.  Waiver Under Wis. Stat. § 805.13(3)

¶17  We first address whether Trammell waived his objection to the use of Wis JI—Criminal 140 by failing to object to it at the jury instruction and verdict conference, as required by Wis. Stat. § 805.13(3).  We begin with the language of § 805.13. State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.  Section 805.13 provides, in pertinent part, as follows:

> At the close of the evidence and before arguments to the jury, the court shall conduct a conference with

10

counsel outside the presence of the jury. At the conference, or at such earlier time as the court reasonably directs, counsel may file written motions that the court instruct the jury on the law, and submit verdict questions, as set forth in the motions. The court shall inform counsel on the record of its proposed action on the motions and of the instructions and verdict it proposes to submit. Counsel may object to the proposed instructions or verdict on the grounds of incompleteness or other error, stating the grounds for objection with particularity on the record. Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict.

§ 805.13(3).   Section 805.13(3) provides no exceptions to the requirement that any objection be made at the jury instruction conference.

¶18  Here, it is undisputed that Trammell's trial counsel listed Wis JI—Criminal 140 as one of Trammell's proposed jury instructions submitted to the circuit court prior to trial.  It is further undisputed that the circuit court properly held the jury instruction and verdict conference at the close of evidence and prior to closing arguments.  Although circuit courts can and do modify jury instructions, Trammell concedes that at no point did his trial counsel object to the use of Wis JI—Criminal 140 as part of the instructions the circuit court would read to the jury.  Trammell also concedes that his trial counsel did not request that Wis JI—Criminal 140 be altered in any way.  The circuit court instructed the jury using the pattern instruction. Trammell's objection to the use of Wis JI—Criminal 140 did not arise until over a year after his conviction, when he filed his motion for postconviction relief on April 10, 2017.

11

¶19 Applying Wis. Stat. § 805.13(3), the circuit court properly followed the requisite procedure, and Trammell's trial counsel did not timely object as required by § 805.13(3).[8] A straightforward application of § 805.13(3) thus leads to the conclusion that Trammell failed to properly object to Wis JI—Criminal 140.

¶20 Trammell attempts to avoid the plain language of Wis. Stat. § 805.13(3) by asserting that his objection was "unknowable" at the time of the jury instruction and verdict conference. Specifically, Trammell asserts that the two law review articles by Cicchini and White, on which Trammell's objection is based, were not published until after Trammell's conviction. Citing State v. Howard, 211 Wis. 2d 269, 287–88, 564 N.W.2d 753 (1997), overruled on other grounds by Gordon, 262 Wis. 2d 380, Trammell claims that since he could not have known about the articles until after his conviction, he could not possibly have made any objection during the jury instruction and verdict conference.

¶21 We are not persuaded. In Howard the defendant was charged with, "inter alia, aiding and abetting the unlawful delivery of a controlled substance (cocaine) while possessing a

---

[8] We note that Trammell does not assert an ineffective assistance of counsel claim regarding his trial counsel's failure to timely object at the jury instruction and verdict conference. We therefore will not address whether Trammell's trial counsel was ineffective under the standard set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).

12

dangerous weapon, in violation of Wis. Stat. §§ 161.41(1)(c)2, 939.05, 939.63(1)(a)3 and 2 (1987-88)." Howard, 211 Wis. 2d at 272. Howard failed to object to the use of two jury instructions during the jury instruction and verdict conference. Id. at 273. Howard was convicted and sentenced on March 23, 1990. Id. at 274. On June 22, 1994, this court issued its decision in State v. Peete, 185 Wis. 2d 4, 18-19, 517 N.W.2d 149 (1994), in which this court interpreted Wis. Stat. § 939.63(1)(a) (1989-90) differently than it had previously been interpreted by incorporating a new element. Because this court's interpretation of § 939.63(1)(a) (1989-90) incorporated a new element that was not part of the jury instructions read to the jury in Howard, unlike Trammell, Howard did not waive his objection because he could not have known about the Peete holding at the time the jury instruction and verdict conference occurred. Howard, 211 Wis. 2d at 275-76.

¶22 This court concluded that Howard did not waive his objection to the two jury instructions, holding that he could only waive objections "which he knew or should have known" at the time of the jury instruction and verdict conference. Id. at 289. Citing Wis. Stat. § 805.13(3) (1989-90), this court stated as follows:

> Here, Howard and his counsel in 1990 had no way to know how this court would construe Wis. Stat. § 939.63 [1989-90] by the time it decided Peete in 1994. We agree that Howard's counsel had an obligation to object at the instructions conference based on incompleteness or other error about which he knew or should have known. We cannot agree that

13

> Howard's counsel could have stated grounds for an objection "with particularity," based on the absence of a nexus element and corresponding instruction. Howard has not waived this issue.

Id. (citation omitted).

¶23 Howard is distinguishable from this case. Here, we are not confronted with a subsequent case which changed the elements of the crime with which Trammell was charged. Instead, Trammell's argument is based purely on law review articles which incorporate the authors' non-peer-reviewed "scientific" studies. In fact, the arguments Trammell makes are indeed known as they are referenced in the jury instruction comments to Wis JI—Criminal 140. The circuit court has the authority to modify the language, and the comment to the jury instruction even provides optional language. State v. Burris, 2011 WI 32, ¶24, 333 Wis. 2d 87, 797 N.W.2d 430 (citing Nommensen v. Am. Cont'l Ins. Co., 2001 WI 112, ¶50, 246 Wis. 2d 132, 629 N.W.2d 301; State v. Lohmeier, 205 Wis. 2d 183, 194, 556 N.W.2d 90 (1996)) ("We examine the challenged jury instructions in light of the proceedings as a whole, keeping in mind that circuit courts have broad discretion in deciding which instructions to give."); Wis JI—Criminal 140, cmt. at 5. But no one requested any such modification and the circuit court was not required to modify the instruction.

¶24 Unlike Howard, Trammel's post-conviction challenge to the reasonable doubt jury instruction could have been made at trial. While the two law review articles Trammell claims support his position were published after his conviction, that

14

fact alone does not render his objection "unknowable" at the time of the conference. The language now in question has been used, in its current form, for decades and has been the subject of constitutional challenges in the past. See Wis JI—Criminal 140, cmt. at 2-5. We therefore conclude that Trammell waived his objection to the use of Wis JI—Criminal 140 by failing to object at the jury instruction and verdict conference, as required by Wis. Stat. § 805.13(3).

¶25 While the court of appeals correctly concluded that its analysis ended with Trammell's waiver of his objection to Wis JI—Criminal 140, we choose to continue our analysis. As this court has stated, the court of appeals has no power to reach an unobjected-to jury instruction because the court of appeals lacks a discretionary power of review. Schumacher, 144 Wis. 2d at 409-10. However, this court possesses a discretionary power of review that it may exercise when a matter is properly before this court. Id. at 410 (citing State v. Strege, 116 Wis. 2d 477, 492, 343 N.W.2d 100 (1984)). While we only exercise our discretionary power of review in rare circumstances, there is no dispute that this matter is properly before us, and as this court exercised its discretionary power of review in Schumacher to examine the constitutionality of an unobjected-to jury instruction, see id. at 409-10, we do so here.

## B. Wisconsin JI-Criminal 140

¶26 We address Trammell's arguments regarding Wis JI—Criminal 140. We begin by discussing the history of the

15

instruction.   We then examine whether this court should overrule
Avila, and finally address Trammell's contention that various
parts of Wis JI—Criminal 140 unconstitutionally reduced the
State's burden of proof below the beyond-a-reasonable-doubt
standard.   We decline to overrule Avila and conclude that Wis
JI—Criminal 140 does not unconstitutionally reduce the State's
burden of proof so to deprive Trammell of Due Process.

### 1.  History of Wis JI-Criminal 140

¶27  Wisconsin JI-Criminal 140 was originally published by
the Wisconsin Judicial Conference Criminal Jury Instructions
Committee[9] (the "Committee") in 1962.   The original version was
similar in all material respects to the current version, and the
instruction has undergone only minor revisions in 1983, 1986,
1987, 1991, and 1994.   Wis JI—Criminal 140, cmt. at 2.   It was
republished in 2000 without any substantive change.   Id.   In
light of numerous United States Supreme Court and Wisconsin
cases addressing the substance of reasonable doubt jury
instructions, the Committee "has carefully reviewed Wis JI—
Criminal 140 several times."   Id.   It has also reviewed other
pattern jury instructions such as those published by the Federal
Judicial Center, and has concluded that Wis JI—Criminal 140, as
it has appeared for decades, correctly states the law.   Id. at

---

[9] The Criminal Jury Instructions Committee is comprised of a
number of Wisconsin judges from across the state and
representatives from the Wisconsin Attorney General's office,
the State Public Defender's office, and the University of
Wisconsin Law School.

16

3-4. The Committee noted that "several parts of the instruction have been approved by the appellate courts," and that "[r]ather than risk creating appellate issues by significantly changing the instruction, the Committee decided it was better to retain the original version." Id. at 2-3.

¶28 In addition, the Committee has considered the two law review articles by Cicchini and White that Trammell relies on in this case. Id. at 5. The Committee stated that it "received several inquiries about the phrase 'you are to search for the truth,'" based on the law review articles, and that "[a]fter careful consideration, the Committee decided not to change the text of the instruction." Id. In deciding not to alter Wis JI—Criminal 140, the Committee relied in large part on this court's holding in Avila, noting that "[c]hallenges to including 'search for the truth' in the reasonable doubt instruction have been rejected by Wisconsin appellate courts."[10] Id. Nonetheless,

---

[10] The Committee also stated the following with regard to the language of Wis JI—Criminal 140:

> If an addition to the text [of Wis JI—Criminal 140] is desired, the Committee recommends the following, which is modeled on the 1962 version of Wis JI—Criminal 140:

> You are to search for the truth and give the defendant the benefit of any reasonable doubt that remains after carefully considering all the evidence in the case.

(continued)

17

circuit courts are endowed with the authority to appropriately tailor jury instructions.

## 2. State v. Avila

¶29 Trammell asks this court to overrule Avila. We address Avila separately because Trammell's arguments regarding Avila seem to differ from his arguments regarding the specific language of the instruction itself. For example, Trammell asks us to invoke the Wisconsin Constitution and provide greater protection than the United States Constitution, arguing that the studies he cites provide ample basis for us to overrule Avila, and further asserting that Avila is contrary to United States Supreme Court precedent.

¶30 In Avila this court considered, inter alia, a starkly similar challenge to the one Trammell brings here——that Wis JI—Criminal 140 (1991), and its final two sentences in particular, "improperly dilutes the State's burden of proof and as such is constitutionally infirm." Avila, 192 Wis. 2d at 887. The at-issue instruction was substantially the same as it appears today. See id. at 888. In Avila this court concluded that Wis JI—Criminal 140 (1991) was constitutional and did not dilute the State's burden of proof. Id. at 890. Specifically, this court considered the jury instruction as a whole, and determined "that

_____

Wis JI—Criminal 140, cmt. at 5. As we conclude that the current version of Wis JI—Criminal 140 correctly states the law and does not unconstitutionally confuse the jury, we decline to express any opinion regarding the Committee's proffered alternative wording.

18

it is not reasonably likely that the jury understood Wis JI—Criminal 140 (1991), to allow conviction based on proof below the [In re] Winship [397 U.S. 358 (1970)] reasonable doubt standard." Id. at 889. This court further concluded that the instruction consistently reinforced the presumption of the defendant's innocence and the State's burden to prove the defendant's guilt beyond a reasonable doubt. Id. at 889. Additionally, this court explained that Wis JI—Criminal 140 properly defined reasonable doubt and emphasized the jury's "'duty to give the defendant the benefit of every reasonable doubt,'" and to search for the truth instead of doubt. Id. at 890 (quoting Wis JI—Criminal 140 (1991)). As a result, this court held that "[t]he instruction as a whole emphasizes with great clarity" the State's burden and the presumption of the defendant's innocence, and does not "dilute the State's burden of proving guilt beyond a reasonable doubt." Id.

¶31 Trammell largely argues that Avila should be overturned because it is refuted by reliable, empirical evidence from two research studies which are now cited in two law review articles. He argues that the language commanding the jurors (1) "not to search for doubt," but instead (2) "to search for the truth" is an impermissible "dual directive." He argues that these dual directives cause some jurors to conclude that they may properly vote guilty even when reasonable doubt exists, that the two studies demonstrate that jurors convict at significantly higher rates when dual directive instructions are given, and that the dual directives effectively reduce the prosecution's

19

burden from beyond a reasonable doubt to preponderance of the evidence.

¶32 Trammell argues that the Avila court, without the benefit of this research, upheld Wis JI—Criminal 140, and that the two studies demonstrate that Avila must be overturned. In doing so, Trammell urges this court to follow State v. Dubose, 2005 WI 126, 285 Wis. 2d 143, 699 N.W.2d 582, and rely on the studies that he cites. He asserts that this court utilized social science research to alter the test for what constitutes an admissible out-of-court identification in Dubose, and that this court should similarly do so here.

¶33 Trammell is correct that in Dubose this court relied in part on social science to hold that Article I, section 8 of the Wisconsin Constitution contained a broader due process right than that under the United States Constitution with respect to an out-of-court identification procedure known as a "showup." Id., ¶¶41, 45. Our holding in Dubose did indeed consider several studies, see id., ¶29, but this court's conclusion was based upon the Wisconsin Constitution and its decision to "interpret our constitution to provide greater protections than its federal counterpart." Id., ¶41. Significantly, Dubose relied on the Due Process Clause of the Wisconsin Constitution to afford greater protection than that provided by the Due Process Clause of the United States Constitution. Today, we decline to provide greater constitutional protection to Trammell utilizing our state constitution. In fact, since Dubose was decided, this court has recognized that Dubose "did not create a

20

precedential sea change." State v. Luedtke, 2015 WI 42, ¶¶48–49, 362 Wis. 2d 1, 863 N.W.2d 592. Rather, this court viewed Dubose narrowly in the context of "showups," and we have declined to extend Dubose beyond its limited scope. See id.

¶34 Moreover, Dubose differs significantly from this case, where Trammell asks us to declare Wis JI—Criminal 140 unconstitutional based on the two law review articles which rely entirely on studies conducted by the two law review authors.[11] We are unpersuaded by Trammell's invocation of Dubose and similarly decline to rely on the two law review articles and the

---

[11] We note the potential reliability concerns each study exhibits. Neither study was peer-reviewed by social scientists, as both appeared in law reviews. Further, as Cicchini and White concede in both articles, there are concerns regarding the studies' respective methodologies. The participants in neither study engaged in an actual trial setting, instead individually reading a case summary providing the elements of the hypothetical crime, a transcript of witness testimony, and the lawyers' closing arguments, and providing their "verdict" without any deliberations. Cicchini & White, supra n.5, 50 U. Richmond L. Rev. at 1160–61. Moreover, the studies were limited in that they each utilized only one fact pattern, meaning that the outcome is unknown under different hypothetical scenarios than the two collective scenarios presented in the studies. See id. at 1161–62. Additionally, the participants engaged in the studies independently and without monitoring, meaning they may have devoted inadequate attention to the studies. See id. at 1163–64. Lastly, in the first study, there was no procedure to screen participants for potential bias, which occurs in a real-world trial setting during voir dire. See id. at 1164–65. While Cicchini and White altered their second study by providing an entirely different fact pattern, screening out participants who spent less than three minutes on completing the entire study, such alterations do little to allay the inherent concerns with either study. See Cicchini & White, supra note 6, 117 Columbia L. Rev. Online at 34–35.

21

studies cited therein.   We decline to rely on Dubose to implement a sea change here, upending a jury instruction that has existed substantially in the same form for decades and has been previously upheld under constitutional challenges. Accordingly, we conclude that Wis JI—Criminal 140, as given, did not cause the jurors to unconstitutionally apply a lower burden of proof to convict Trammell.   We decline to overrule Avila, and thus hold that the use of Wis JI—Criminal 140 at trial did not deprive Trammell of due process.

¶35 Additionally, Trammell argues that Avila is contrary to United States Supreme Court precedent and thus must be overturned.   Specifically, Trammell cites two United States Supreme Court cases——Sullivan v. Louisiana, 508 U.S. 275 (1993), and Cage v. Louisiana, 498 U.S. 39 (1990) (per curiam)——in support of his position.   Both cases, however, are readily distinguishable.   Sullivan and Cage were based on a Louisiana pattern jury instruction that defined "reasonable doubt" as "such doubt as would give rise to a grave uncertainty," and "an actual substantial doubt."   Cage, 498 U.S. at 40; Sullivan, 508 U.S. at 277.   The Court in Cage held that "a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause."   Cage, 498 U.S. at 41.   In Sullivan, the Court recognized Cage and accepted it as controlling despite its per curiam status.   Sullivan, 508 U.S. at 278.

¶36 The jury instruction language at issue in Sullivan and Cage was not the language used in Wis JI—Criminal 140.   The

22

Supreme Court in Sullivan and Cage concluded that the Louisiana jury instruction misstated the state's burden by defining "reasonable doubt" and as a "grave uncertainty." Neither phrase is used in Wis JI—Criminal 140 and neither Sullivan nor Cage addressed the specific language Trammell challenges. Therefore, neither case supports Trammell's position that Wis JI—Criminal 140 inaccurately states the law or reduces the State's burden so to require reversal of Avila.

¶37 We next consider Trammell's interrelated argument that Wis JI—Criminal 140 misleads, confuses, or misdirects the jury. We conclude that Wis JI—Criminal 140 does not. We instead agree with the State's arguments that: (1) the two law review articles Trammell cites are simply speculation based upon hypothetical scenarios, and (2) reviewing Wis JI—Criminal 140 in light of the entire proceeding leads to a conclusion that the instruction is not reasonably likely to confuse jurors into applying an unconstitutional reasonable doubt standard. The State urges this court to afford no weight to the studies featured in the law review articles, as this court is to determine issues of law, and as the studies are superfluous and rely on assertions of fact and reliability "that have not been tested in any court."[12]

¶38 Considering Wis JI—Criminal 140 in light of the entire proceedings, nothing indicates a reasonable probability that the

---

[12] See discussion, supra, note 11.

jury was misled, confused, or misdirected into applying the reasonable doubt standard. We therefore decline to overrule Avila.

### 3. Constitutionality of Wis JI—Criminal 140

¶39 Next we address Trammell's argument that Wis JI—Criminal 140 is "constitutionally crippled for being blighted by multiple compounding burden-reducing errors and confusing and mis-directing the jury." In short, he argues that the reasonable doubt instruction allowed a "finding of guilt based on a degree of proof below that which is constitutionally required." Victor v. Nebraska, 511 U.S. 1, 2 (1994). The question is not "whether the instruction 'could have' been applied unconstitutionally, but whether there is a reasonable likelihood that the jury did so apply it." Id. (citing Estelle v. McGuire, 502 U.S. 62, 72 & n. 4 (1991)).

¶40 Trammell argues that Wis JI—Criminal 140 violated his due process rights because of what he terms: (1) The "'important affairs of life' analogy"; (2) "'The alternative hypothesis' flaw"; (3) "The unsavory 'unreasonable doubt' flaw"; and (4) "The truth-focus flaw." Trammell surmises that the "multiple flaws of [Wis JI—Criminal 140] compound to make it 'possibly the worst jury instruction on reasonable doubt in the nation'" requesting that this court overrule Avila and grant him specific relief. Thus, we are called upon to determine whether the standard reasonable doubt jury instruction given here created a "reasonable likelihood that the jury understood the

24

instructions to allow conviction based on proof insufficient to meet the Winship standard." Victor, 511 U.S. at 6.

¶41 It is true that the State must prove Trammell committed each element of the offenses charged before Trammell can be found guilty. We know that the jury was so instructed.[13] The beyond-a-reasonable-doubt standard is not expressly referenced in the United States Constitution or the Wisconsin Constitution but has been deemed a requirement of due process. However, no specific words are constitutionally required when defining reasonable doubt.[14] See Victor, 511 U.S. at 5. While

---

[13] See Wis JI—Criminal 400 (2005) (defining "party to a crime" and "aiding and abetting"), Wis JI—Criminal 1464 (2007) (addressing count two in this case——taking and driving a vehicle without owner's consent), and Wis JI—Criminal 1480 (2016) (addressing count one in this case——armed robbery), all of which were read to the jury prior to deliberations.

[14] Indeed, various federal circuits have defined "reasonable doubt" in different ways in their respective pattern criminal jury instructions. See Judicial Council of the United States Third Judicial Circuit, Pattern (Criminal) Jury Instructions, 1.13 (2012) (defining "reasonable doubt" as "a fair doubt based on reason, logic, common sense, or experience," and one "that would cause an ordinary reasonable person to hesitate to act in matters of importance in his or her own life"; further defining it as not meaning "proof beyond all possible doubt or to a mathematical certainty"); United States Fifth Circuit District Judges Association, Pattern Jury Instructions (Criminal Cases), 1.05 (2015) (defining "reasonable doubt" as "a doubt based upon reason and common sense" and based on "proof of such a convincing character that you would be willing to rely and act upon it without hesitation in making the most important decisions of your own affairs"); Sixth Circuit Committee on Pattern Criminal Jury Instructions, Pattern Criminal Jury Instructions, 1.03 (2019) (defining "reasonable doubt" as "a doubt based on reason and common sense," and based on "proof which is so convincing that you would not hesitate to rely and act on it in making the most important decisions in your own

(continued)

25

the Due Process Clause of the Fourteenth Amendment does not expressly address the application of the reasonable doubt standard in criminal proceedings, the United States Supreme Court in Winship held "that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Winship, 397 U.S. at 364. In so holding, the Court explained as follows:

> [T]he Court said in Brinegar v. United States, [338 U.S. 160, 174 (1949)], that "[g]uilt in a criminal case must be proved beyond a reasonable doubt and by

lives"); Judicial Committee on Model Jury Instructions for the Eighth Circuit, Model Jury Instructions, 3.11 (2017 ed.) (defining "reasonable doubt" as "doubt based upon reason and common sense" that "leaves you firmly convinced of the defendant's guilt," and based on "proof of such a convincing character that a reasonable person, after careful consideration, would not hesitate to rely and act upon that proof in life's most important decisions"); Ninth Circuit Jury Instructions Committee, Model Criminal Jury Instructions, 3.5 (2010 ed.) (defining "reasonable doubt" as "proof that leaves you firmly convinced the defendant is guilty" and "based upon reason and common sense"); Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, Criminal Pattern Jury Instructions, 1.05 (2011 ed.) (defining "reasonable doubt" as "proof that leaves you firmly convinced of the defendant's guilt . . . based on reason and common sense"); Judicial Council of the United States Eleventh Judicial Circuit, Criminal Pattern Jury Instructions, B3 (2019) (defining "reasonable doubt" as "a real doubt" and based on "proof so convincing that you would be willing to rely and act on it without hesitation in the most important of your own affairs"). The Seventh Circuit has chosen not to define reasonable doubt in its pattern criminal jury instruction. See Committee on Pattern Jury Instructions of the Seventh Circuit, Pattern Criminal Jury Instructions of the Seventh Circuit, 1.04 (2012 ed.) (stating, "[No instruction.]").

evidence confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has crystallized into rules of evidence consistent with that standard. These rules are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property." Davis v. United States, [160 U.S. 469, 488 (1895)], stated that the requirement is implicit in "constitutions . . . [which] recognize the fundamental principles that are deemed essential for the protection of life and liberty."

Id. at 362.

¶42 We therefore address this jury instruction challenge as a matter of constitutional law arising under due process. In evaluating the constitutionality of a challenged jury instruction, courts look not only to the at-issue instruction itself, but also to other instructions given and the proceedings as a whole. See Victor, 511 U.S. at 15-16 (considering the constitutionality of a reasonable doubt instruction using the phrase "moral certainty" in light of the entire instructions given to the jury); State v. Hubbard, 2008 WI 92, ¶27, 313 Wis. 2d 1, 752 N.W.2d 839 ("Jury instructions are not to be judged in artificial isolation, but must be viewed in the context of the overall charge."). This court has stated that there are two types of challenges to jury instructions: (1) "those challenging the legal accuracy of the instructions"; and (2) "those alleging that a legally accurate instruction unconstitutionally misled the jury." Burris, 333 Wis. 2d 87, ¶44. Trammell appears to assert both challenges. This constitutional challenge, however, must be based upon more than conjecture. Such a challenge must demonstrate a reasonable

27

likelihood that the jury understood that the instructions allowed a conviction based upon insufficient proof. See id., ¶49 ("'Wisconsin courts should not reverse a conviction simply because the jury possibly could have been misled; rather a new trial should be ordered only if there is a reasonable likelihood that the jury was misled and therefore applied potentially confusing instructions in an unconstitutional manner.'") (quoting Lohmeier, 205 Wis. 2d at 193-94); see also Victor, 511 U.S. at 6 ("The constitutional question . . . is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the Winship standard."); Winship, 397 U.S. at 367 (requiring sufficient proof beyond a reasonable doubt with juveniles as with adults when they are charged with a violation of criminal law).

¶43 Specifically, Trammell argues that the "'important affairs of life' analogy" in the jury instruction has burden-reducing effects. He argues that instructing that beyond-a-reasonable-doubt determinations be made based upon the important affairs of one's life demonstrates a lower burden in that such determinations are largely intuitive, full of bias, based on variances, imperfect, and unique to personal experience. He surmises that such decisions generally involve considerable uncertainty and risk-taking. Specifically, the section of the instruction to which he objects states:

> The term "reasonable doubt" means a doubt based upon reason and common sense. It is a doubt for which

28

a reason can be given, arising from a fair and rational consideration of the evidence or lack of evidence. It means such a doubt as would cause a person of ordinary prudence to pause or hesitate when called upon to act in the most important affairs of life.

Wis JI—Criminal 140 at 1. Trammell's selection of portions of this instruction to advance his argument have been previously considered and deemed constitutionally satisfactory. See Victor, 511 U.S. at 20-21 (citing Holland v. United States, 348 U.S. 121, 139-40 (1954)).

¶44 In support of his position, Trammell cites United States v. Jaramillo-Suarez, 950 F.2d 1378 (9th Cir. 1991), and People v. Johnson, 115 Cal. App. 4th 1169 (2004). In Jaramillo-Suarez, the Ninth Circuit indicated that it preferred federal district courts avoid using a jury instruction which instructed a jury to find the defendant guilty if "you find the evidence so convincing that an ordinary person would be willing to make the most important decisions in his or her own life on the basis of such evidence." Jaramillo-Suarez, 950 F.2d at 1386. However, the Court also held that reversal was not required, as "the reasonable doubt instruction, taken in context with all of the other instructions, did not detract from the heavy burden suggested by the use of the term 'reasonable doubt' standing alone." Id. (internal quotation marks omitted).

¶45 In Johnson, the at-issue jury instruction——which the court held improperly amplified the reasonable doubt standard—— bore no real resemblance to Wis JI—Criminal 140. There, the court defined "reasonable doubt" by stating that people engage

29

in activities such as flying on airplanes and taking vacations "because we have a belief beyond a reasonable doubt that we will be here tomorrow." Johnson, 115 Ca. App. 4th at 1171. Neither Jaramillo-Suarez nor Johnson are persuasive and taking Wis JI—Criminal 140 as a whole, "reasonable doubt" is correctly defined. Moreover, as discussed previously, the jury instructions in their entirety reinforce the proper definition of "reasonable doubt," further establishing that the portion of Wis JI—Criminal 140 discussing "the most important affairs of life" did not misstate the law. Trammell's arguments are unpersuasive, and we conclude that this portion of the instruction is not constitutionally infirm.

¶46 Trammell's next objection is framed as "the alternative hypothesis" flaw. This passage immediately precedes the important affairs of life language to which Trammell objects. The instruction states in relevant part: "If you can reconcile the evidence upon any reasonable hypothesis consistent with the defendant's innocence, you should do so and return a verdict of not guilty." Wis JI—Criminal 140 at 1. Trammell argues that this reasonable hypothesis language creates two problems. First, Trammell claims that it puts a defendant who presents evidence and the theory of the defense in a competing position, requiring the jury to balance the two competing theories and thus effectuating a preponderance-of-the-evidence standard instead of a beyond a reasonable doubt standard. Second, he argues that the reasonable hypothesis verbiage shifts

the burden to the defense by focusing on the defendant's ability to produce alternatives to the government's case.

¶47 In support of his position, Trammell cites United States v. Khan, 821 F.2d 90 (2d Cir. 1987). Khan provides Trammell no support. There, the court considered the constitutionality of a jury instruction which stated, "So, if the jury views the evidence in the case as reasonably permitting either of two conclusions, one of innocence, the other of guilt, you, the jury, should, of course, adopt the conclusion of innocence." Id. at 92. While the court expressed distaste for the language used, it considered the jury instructions as a whole and concluded that the court "properly instruct[ed] the jury on reasonable doubt." Id. at 92-93. If anything, the court's holding in Khan provides support for the State.

¶48 Moreover, the language used here does not have the same effect as the 'either-or' language used in Khan. Rather, it echoes the reasonable doubt standard stating, "If you can reconcile the evidence upon any reasonable hypothesis consistent with the defendant's innocence, you should do so and return a verdict of not guilty." Wis JI—Criminal 140 at 1. Further, Wis JI—Criminal 140 as a whole clearly and repeatedly places the burden of proof on the State, and the remainder of the jury instructions provided to the jury further engender a proper understanding of the reasonable doubt standard and the State's burden. The "reasonable hypothesis" language in Wis JI—Criminal 140 does not lead to a conclusion that the instruction incorrectly states the law. The objected-to language instead

31

informs the jurors to engage in consideration of a reasonable hypothesis consistent with the defendant's innocence and focuses on the defendant's innocence.  It instructs the jury to return a not guilty verdict if there is such a reasonable theory.  We therefore disagree with Trammell's contention that this section of the instruction is unconstitutional.

¶49 Turning to Trammell's next argument, he asserts that the jury instruction language referencing sympathy and the fear to return a verdict of guilt creates a purported "unreasonable doubt flaw."  Trammell argues that the negative definition of reasonable doubt provided discourages acquittals based on pro-defense biases, but that it does not discourage convictions on pro-prosecution biases.

¶50 Trammell cites no case addressing the issue, and his argument is unpersuasive.  The circuit court instructed the jury, "A reasonable doubt is not a doubt which is based upon mere guesswork or speculation.  A doubt which arises merely from sympathy or from fear to return a verdict of guilt is not a reasonable doubt."  See Wis JI—Criminal 140 at 2.  That portion of the jury instruction merely reinforces the idea that jurors are to fairly and rationally consider the evidence, which is assuredly not a misstatement of the law.  We therefore conclude that the portion of the instruction referring to sympathy and the fear of returning a guilty verdict is constitutional.

¶51 Trammell next argues that there is a "truth focus flaw" in the burden of proof jury instruction.  Again, Trammell harkens back to the dual directives analogy from the two law

32

review articles and the studies relied upon therein. He takes issue with the jury instruction language, "[Y]ou are not to search for doubt. You are to search for the truth." Id. He argues that this phrase puts criminal juries in the position of civil juries to determine which narrative is more true. Trammell argues that weighing truth narratives is not the jury's task. He argues that as a whole and as the studies have shown, this jury instruction confused the jury and misdirected the jury such that his conviction must be overturned. As previously discussed, we disagree and reaffirm that Avila correctly concluded that the instruction survives constitutional scrutiny. The search for the truth language does not lower the burden for the State.

¶52 Trammell finally argues that as the studies have shown, this jury instruction as a whole confused and misdirected the jury such that his conviction must be overturned. Avila answers this in the negative. However, we further address the standard jury instructions and why, as a whole, they dispel Trammell's catch-all argument.

¶53 In the opening instructions given to the jury, the jury is routinely told:

> Regardless of any opinion you may have about what the law is or ought to be, you must base your verdict on the law I give you in these instructions. Apply that law to the facts in the case which have been properly proven by the evidence. Consider only the evidence received during this trial and the law as given to you by these instructions and from these alone, guided by your soundest reason and best judgment, reach your verdict.

33

Wis JI—Criminal 100 (2000). The jury is told to consider only the evidence received during trial. Wis JI-Criminal 103 (2000). They are instructed to use their sound reason and best judgment. Wis JI-Criminal 100 (2000). In Wis JI—Criminal 101 (2001), the jurors are advised that the lawyers' remarks are not evidence. The instructions define evidence as the sworn testimony of the witnesses, the exhibits, and any stipulated or agreed to facts. Wis JI—Criminal 103 (2000). The jurors are admonished not to rely on anything they have seen or heard outside the courtroom and that they "are to decide the case solely on the evidence offered and received at trial." Id. They are cautioned that the legal charging document is not evidence and is not to be considered in any way as evidence against the defendant. Wis JI—Criminal 145 (2000). They are admonished to disregard entirely any question the circuit court did not allow to be answered and not to draw any conclusions from the lawyers' objections. Wis JI—Criminal 147 (2000). They are told not to draw any conclusions from objections made or court rulings on them and that they "are the sole judges of the credibility of the witnesses and the weight of the evidence." Wis JI—Criminal 148 (2000). They are advised "[w]hether evidence is direct or circumstantial, it must satisfy you beyond a reasonable doubt that the defendant committed the offense before you may find the defendant guilty." Wis JI—Criminal 170 (2000).

¶54 Repeatedly, the jury is told that it is endowed with the responsibility to determine how much weight, if any, to give the evidence, testimony and witnesses. Wis JI—Criminal 190

34

(2000), Wis JI—Criminal 300 (2000).  The jury is instructed that it is their duty to scrutinize and weigh the testimony of the witnesses and to determine the effect of the evidence as a whole.  Wis. JI-Criminal 300 (2000).  The jury is told, "You are the sole judges of the credibility, that is, the believability, of the witnesses and of the weight to be given to their testimony."  Id.  The jury is given various factors to consider and then to "give the testimony of each witness the weight you believe it should receive."  Id.  They are to decide who to believe or disbelieve, what portion of the testimony to accept or not, and what weight to attach to the evidence and testimony. Id.  They are to determine the truth based upon the evidence presented and then apply the law as instructed to the evidence. They are instructed that "[i]n weighing the evidence, you may take into account matters of your common knowledge and your observations and experience in the affairs of life."  Wis JI-Criminal 195 (2000).

¶55 The reasonable doubt instruction does not stand alone. We emphasize that for each count with which the defendant is charged, the jury is advised of the State's burden of proof: "Before you may find the defendant guilty of the offense, the state must prove by evidence that satisfies you beyond a reasonable doubt that the following . . . elements were present."  With respect to each count, the jury is again advised regarding its decision and told, "If you are satisfied beyond a reasonable doubt that all . . . elements . . . have been proved, you should find the defendant guilty.  If you are not so

35

satisfied, you must find the defendant not guilty." The jury is never instructed that it <u>must</u> find the defendant guilty. Rather, with the consideration of guilt, the word "should" is used. Regarding when they are not so satisfied that the State has met its burden to prove each element beyond a reasonable doubt, they are directed that they "must" find the defendant not guilty. Again, this instruction is consistent with a presumption of innocence and the "reasonable hypothesis" language.

¶56 The reasonable doubt instruction given in the case at issue, which also is the standard instruction in Wis JI—Criminal 140, advises the jury to examine the evidence with care and caution. It tells the jury to act with judgment, reason, and prudence. Wis JI—Criminal 140 at 1. The very first thing the jury is advised with respect to the burden of proof is the presumption of innocence. <u>Id.</u> The jurors are told:

> Defendants are not required to prove their innocence. The law presumes every person charged with the commission of an offense to be innocent. This presumption requires a finding of not guilty unless in your deliberations you find it is overcome by evidence which satisfies you beyond a reasonable doubt that the defendant is guilty.

<u>Id.</u>

¶57 The very next section speaks of the burden being on the State and reflects that, "The burden of establishing every fact necessary to constitute guilt is upon the state. Before you can return a verdict of guilty, the evidence must satisfy you beyond a reasonable doubt that the defendant is guilty."

36

<u>Id.</u> The following section advises the jury that if they can reconcile the evidence upon any reasonable hypothesis consistent with the defendant's innocence, they should return a verdict of not guilty. <u>Id.</u> The next section read describes reasonable doubt based upon reason and common sense:

> It is a doubt for which a reason can be given, arising from a fair and rational consideration of the evidence or lack of evidence. It means such a doubt as would cause a person of ordinary prudence to pause or hesitate when called upon to act in the most important affairs of life.
>
> A reasonable doubt is not a doubt based on mere guesswork or speculation. A doubt which arises merely from sympathy or from fear to return a verdict of guilt is not a reasonable doubt. A reasonable doubt is not a doubt such as may be used to escape the responsibility of a decision.

<u>Id.</u> at 1-2.

¶58 Finally, the jury is advised, "While it is your duty to give the defendant the benefit of every reasonable doubt, you are not to search for doubt. You are to search for the truth." <u>Id.</u> at 2. While picking and choosing various phrases or words from the instructions makes for an interesting argument, the instructions as a whole direct the jury to understand the presumption of innocence due to the defendant, remind it of the State's high burden, instructs that the defendant is due the benefit of the doubt and to soberly weigh and consider the evidence, testimony and witnesses presented at trial, and apply the law to the facts, reaching a sound conclusion based only on the facts and the law.

37

¶59 As a whole, the jury is clearly instructed regarding the presumption of innocence. To parse out certain phrases from the reasonable doubt instruction and as the defense would have us do, conclude that those words in a vacuum diminish the State's burden of proof, would also require us to conclude that the jury did not properly follow the other instructions and repeated admonitions regarding the State's requirement to meet its burden of proof as to each element. Here, there is not a "reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the Winship standard." Victor, 511 U.S. at 6. Trammell's argument fails as it would not cause a jury to understand those phrases to mean "something less than the very high level of probability required by the Constitution in criminal cases." Id. at 14. In fact, the instructions explicitly tell the jurors to base their conclusions on the evidence in the case and the law as instructed, holding the State to its burden to prove each element beyond a reasonable doubt.

### C. Discretionary Reversal

¶60 Trammell lastly contends that discretionary reversal is warranted under Wis. Stat. § 751.06. Trammell asserts that the circuit court's use of Wis JI—Criminal 140 warrants discretionary reversal, and thus a new trial, under Wis. Stat. § 751.06 "because the instruction confused the jury in a manner that went to the integrity of the fact-finding process," and "by mis-stating the prosecution's burden." He further argues that the use of the jury instruction "prevented the real

38

controversy . . . from being fully tried according to the requisite standard of proof/persuasion." "In applying § 751.06, we exercise our discretion infrequently, judiciously, and only in exceptional cases." Langlois, 382 Wis. 2d 414, ¶55 (citing State v. Avery, 2013 WI 13, ¶38, 345 Wis. 2d 407, 826 N.W.2d 60). Since we conclude that Wis JI—Criminal 140 does not misstate the law, does not likely confuse the jury, and does not reduce the State's burden, and as there is substantial evidence to support the jury's verdict, we conclude that this is not an exceptional case warranting discretionary reversal under § 751.06.

¶61 Though Trammell waived his objection to Wis JI—Criminal 140, this court may nevertheless consider whether Trammell is entitled to relief under Wis. Stat. § 751.06. See Clark v. Leisure Vehicles, Inc., 96 Wis. 2d 607, 616-17, 292 N.W.2d 630 (1980) (concluding that the plaintiff waived his objection to a verdict form under Wis. Stat. § 805.13(3) (1979-80), but stating that "the failure to make a timely assertion of error does not preclude this court from considering the issue of the defect in the verdict" under § 751.06 (1979-80)).

¶62 Wisconsin Stat. § 751.06 states as follows:

In an appeal in the supreme court, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record, and may direct the entry of the proper judgment or remit the case to the trial court for the entry of the proper judgment or for a new trial, and direct the

39

making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

Thus, this court may order a new trial under one of two disjunctive prongs: "(1) whenever the real controversy has not been fully tried; or (2) whenever it is probable that justice has for any reason miscarried." State v. Hicks, 202 Wis. 2d 150, 159-60, 549 N.W.2d 435 (1996) (citing State v. Wyss, 124 Wis. 2d 681, 735, 370 N.W.2d 745 (1985)).

¶63 This court has stated that the real controversy has not been fully tried under Wis. Stat. § 751.06 in two situations:

> (1) when the jury was erroneously not given the opportunity to hear important testimony that bore on an important issue of the case; and (2) when the jury had before it evidence not properly admitted which so clouded a crucial issue it may be fairly said that the real controversy was not fully tried.

Id. at 160. Regarding the miscarriage of justice prong, this court has explained that justice is only miscarried if "there would be a substantial probability that a different result would be likely on retrial." Schumacher, 144 Wis. 2d at 401 (citing Wyss, 124 Wis. 2d at 740-41). "As such, the defendant must meet a higher threshold in order for this court to grant a new trial under the second prong." State v. Maloney, 2006 WI 15, ¶14 n.4, 288 Wis. 2d 551, 709 N.W.2d 436.

¶64 Here, the record demonstrates that nothing in Trammell's trial prevented the real controversy from being fully tried, nor was there a miscarriage of justice. Examining the

40

first prong, the real controversy here was fully tried. Trammell does not bring an evidentiary challenge, instead claiming that under State v. Perkins, 2001 WI 46, 243 Wis. 2d 141, 626 N.W.2d 762, the use of the at-issue jury instruction in Perkins warrants a new trial under the first prong. Like Trammell, Perkins waived his right to object to the use of a jury instruction by failing to object at the jury instruction and verdict conference, but claimed that discretionary reversal was warranted under Wis. Stat. § 751.06. Id., ¶11-12. This court agreed, concluding that the at-issue jury instruction in Perkins failed to define what would constitute a "threat[] to cause bodily harm," and that as a result, Perkins was entitled to a new trial because the real controversy was not fully tried. Id., ¶¶33-37, 49.

¶65 Perkins is inapposite to this case. In Perkins this court concluded that the real controversy was not fully tried because the at-issue jury instruction gave an incomplete statement of the law by failing to define a threat to cause bodily harm. Here, Wis JI—Criminal 140 does not provide an incomplete statement of the law as did the jury instruction in Perkins. Indeed, it discusses the reasonable doubt standard at length and with specificity. Moreover, as discussed at length previously, Wis JI—Criminal 140 as a whole does not misstate the law or serve to reduce the State's burden of proof, nor does it likely confuse the jury. Accordingly, we conclude that the real controversy at issue here has been fully tried.

¶66 Turning to the second prong, we conclude that there is not a substantial probability that a different result would be likely on retrial. At trial, the State presented a wealth of evidence supporting Trammell's conviction on both counts. The State presented testimony from the victim, the victim's girlfriend, and Trammell's accomplice Silas, all of whom corroborated one another and clearly implicated Trammell in the armed theft of the Buick. Officer Strasser's testimony further corroborated the State's theory of the case, and Officer Draeger's testimony indicated that Trammell tried to convince another individual to lie on his behalf at trial. In addition to the testimony offered at trial, the State presented fingerprints from the Buick that matched Trammell's left index finger and Silas's right index finger. Given the overwhelming amount of evidence supporting Trammell's guilt, we conclude that there is not a substantial probability that a different result would occur if the matter were to be retried. As the real controversy has been fully tried and there is no substantial probability of a different result if a retrial occurred, discretionary reversal under Wis. Stat. § 751.06 is unwarranted.

## IV.  CONCLUSION

¶67 We conclude that Trammell waived his right to object to the use of Wis JI—Criminal 140 by failing to object to its use at the jury instruction and verdict conference, pursuant to Wis. Stat. § 805.13(3). On that basis, the court of appeals properly denied Trammell's appeal and correctly concluded that it could not consider whether Wis JI—Criminal 140 misstates the

law, confuses the jury, and reduces the State's burden. However, unlike the court of appeals, this court may nonetheless consider the instruction under its discretionary power of review. Schumacher, 144 Wis. 2d at 409-10. We exercise that power here. The constitutional question with which we are presented is whether there is a reasonable likelihood that the jury understood the instructions to allow a conviction based upon insufficient proof. We conclude that Wis JI—Criminal 140 does not unconstitutionally reduce the State's burden of proof below the reasonable doubt standard. Lastly, we conclude that discretionary reversal under Wis. Stat. § 751.06 is not warranted. We therefore affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶68 SHIRLEY S. ABRAHAMSON, J., withdrew from participation.

43

¶69 REBECCA FRANK DALLET, J. *(concurring).* I agree with the majority opinion that the two law review articles cited by Trammell do not provide the overwhelming evidence necessary to conclude that Wis JI——Criminal 140 (2017) unconstitutionally reduces the State's burden of proof below the reasonable doubt standard or to warrant discretionary reversal. Notwithstanding, I write separately for two reasons: First, to respond to the majority opinion's denigration of this court's holding in State v. Dubose, 2005 WI 126, 285 Wis. 2d 143, 699 N.W.2d 582; and second, to encourage the Wisconsin Criminal Jury Instructions Committee to revise Wis JI——Criminal 140 in the interest of justice in light of the arguments made in the amicus curiae brief of the Wisconsin State Public Defender.

¶70 In Dubose, we recognized extensive social science studies over a ten-year period demonstrating the unreliability of eyewitness testimony and, based upon that overwhelming evidence, we adopted new standards for the admissibility of out-of-court identification procedures. Id., ¶¶29-33. Dubose stands for the principle that prior decisions of this court may become unsound when they are based upon principles that are no longer valid. See id., ¶¶31-33. Dubose further upholds this court's right to interpret the Wisconsin Constitution to provide greater protections than the United States Constitution. Id., ¶41.

¶71 Although the majority opinion acknowledges that the Dubose court considered several studies, it minimizes the impact of the studies when it summarily concludes that the court's

1

holding was instead based upon the Wisconsin Constitution. Majority op., ¶33. The majority opinion seemingly calls into question this court's ability to consider social science evidence in constitutional cases. While I agree that two law review articles alone do not provide the type of extensive new research like the studies we relied upon in Dubose, the Dubose case was "not the first to result in a change in principles based on extensive new studies completed after a court decision that was premised on constitutional interpretation and application." Dubose, 285 Wis. 2d 143, ¶43. For example, in Brown v. Board of Education, 347 U.S. 483, 494 & n.11 (1954), the United States Supreme Court overturned the "separate but equal" doctrine and provided an important shift in constitutional law based on recent studies that demonstrated the negative effects of segregation in public education. The United States Supreme Court stated: "We must consider public education in light of its full development and its present place in American life throughout the Nation." Id. at 492-93. In addition to desegregation of schools, other examples of cases where social science research has formed the basis for the United States Supreme Court to abrogate previous decisions include: the regulation of women's working hours in Muller v. State of Oregon, 208 U.S. 412 (1908); criminalization of consensual same sex intimate conduct in Lawrence v. Texas, 539 U.S. 558 (2003); and imposition of the death penalty on the mentally ill and juveniles in Atkins v. Virginia, 536 U.S. 304 (2002), and Roper v. Simmons, 543 U.S. 551 (2005). The majority

2

opinion cannot possibly be suggesting that this court can no longer be informed by current research that measures the effects of previous court decisions on an evolving society.

¶72 In its effort to limit Dubose, the majority also challenges our ability to interpret the Wisconsin Constitution more broadly than the United States Constitution. This court has stated:

> This court . . . will not be bound by the minimums which are imposed by the Supreme Court of the United States if it is the judgment of this court that the Constitution of Wisconsin and the laws of this state require that greater protection of citizens' liberties ought to be afforded . . . .

State v. Doe, 78 Wis. 2d 161, 172, 254 N.W.2d 210 (1977).

¶73 In Dubose, 285 Wis. 2d 143, ¶41, we emphasized that even though Article I, Section 8 includes language similar to that of the Due Process Clause of the United States Constitution, "we retain the right to interpret our constitution to provide greater protections than its federal counterpart." We clarified in State v. Luedtke, 2015 WI 42, ¶50, 362 Wis. 2d 1, 863 N.W.2d 592, that the Due Process Clause of the Wisconsin Constitution provides greater protection in one identification procedure, the showup. This court does not forfeit to the federal judiciary its power to interpret our constitution. See State v. Knapp, 2005 WI 127, ¶60, 285 Wis. 2d 86, 700 N.W.2d 899 ("While textual similarity or identity is important when determining when to depart from federal constitutional jurisprudence, it cannot be conclusive . . . . The people of this state shaped our constitution, and it is our

3

solemn responsibility to interpret it.") The <u>Dubose</u> case remains an example of this court's ability to consider social science evidence in constitutional cases and to interpret our constitution more broadly than its federal counterpart.

¶74 Although I agree that there is currently insufficient evidence that Wis JI——Criminal 140 unconstitutionally reduces the State's burden of proof below the "beyond a reasonable doubt" standard, I nonetheless respectfully request that the Wisconsin Criminal Jury Instructions Committee review the instruction again in the interest of justice in light of the arguments made in the amicus curiae brief of the Wisconsin State Public Defender. I believe that the combination of two deficiencies in the instruction could potentially dilute the burden of proof in Wis JI——Criminal 140 and thus warrants further consideration.

¶75 First, Wis JI——Criminal 140 fails to define "<u>beyond</u> a reasonable doubt."[1] The United States Supreme Court has described the standard of proof of "beyond a reasonable doubt" as "a subjective state of near certitude of the guilt of the accused" that symbolizes the significance our society attaches to liberty. <u>Jackson v. Virginia</u>, 443 U.S. 307, 315 (1979); <u>see also</u> <u>In re Winship</u>, 397 U.S. 358, 364 (1970) (declaring proof

---

[1] The majority repeatedly refers to the standard of proof as "reasonable doubt" instead of "beyond a reasonable doubt." Majority op., ¶¶2, 41, 48, 65, 67. The majority opinion likewise provides examples of definitions of "reasonable doubt" from other jurisdictions, but fails to acknowledge the failure of Wis JI——Criminal 140 to define "beyond a reasonable doubt." <u>See</u> majority op., ¶41 n.14.

4

beyond a reasonable doubt to be equivalent to proof to an "utmost certainty"). While the United States Supreme Court has declined to require specific language to describe this burden of proof, we may look to other states for guidance.

¶76 Some states convey the requisite level of proof by instructing jurors that they must be "firmly convinced" of the defendant's guilt. See, e.g., Revised Arizona JI——Criminal 20 ("Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt."); Delaware Pattern Criminal Jury Instructions § 2.6 ("proof that leaves you firmly convinced of the defendant's guilt"); Indiana Criminal Pattern Jury Instruction No. 1.1500 ("Reasonable doubt exists when you are not firmly convinced of the Defendant's guilt . . ."); 17 La. Civ. L. Treatise, Criminal Jury Instructions § 3.3 ("Reasonable doubt . . . is present when, after you have carefully considered all the evidence, you cannot say that you are firmly convinced of the truth of the charge."); New Jersey Model Criminal Jury Charges Non 2C Charges ("proof . . . that leaves you firmly convinced of the defendant's guilt"); North Carolina Pattern Jury Instructions § 101.10 ("proof that fully satisfies or entirely convinces you of the defendant's guilt"); 2 CR Ohio Jury Instructions § 405.07 ("'Reasonable doubt' is present when the jurors . . . cannot say they are firmly convinced of the truth of the charge."); Model Utah Jury Instructions, Second Edition CR103 ("Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.").

¶77 Other states have described the level of certainty required as "an abiding conviction" of guilt or a "moral certainty." <u>See</u> 1-1 Arkansas Model Jury Instructions——Criminal AMCI 2d 110 ("A juror is satisfied beyond a reasonable doubt if after an impartial consideration of all the evidence he has an abiding conviction of the truth of the charge."); Judicial Council of California Criminal Jury Instructions No. 103 ("proof that leaves you with an abiding conviction that the charge is true"); Florida Standard Jury Instructions § 3.7 ("if, after carefully considering, comparing and weighing all the evidence, there is not an abiding conviction of guilt, or, if, having a conviction, it is one which is not stable but one which wavers and vacillates, then the charge is not proved beyond every reasonable doubt"); Massachusetts Criminal Jury Instructions No. 2.180 ("you have in your minds an abiding conviction, to a moral certainty, that the charge is true"); Nevada Revised Statutes Annotated § 175.211 ("If the minds of the jurors . . . are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt."); North Dakota Pattern Criminal Instructions 2017 § K-1.10 ("You should find the Defendant guilty only if you have a firm and abiding conviction of the Defendant's guilt . . ."); 7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 2.03 ("moral certainty is required").

¶78 In contrast, Wis JI——Criminal 140 describes what a "reasonable doubt" is:  "a doubt based upon reason and common sense," "a doubt for which a reason can be given," and "a doubt

6

as would cause a person of ordinary prudence to pause or hesitate when called upon to act in the most important affairs of life." The instruction further describes what a "reasonable doubt" is not: "a doubt which is based on mere guesswork or speculation," "[a] doubt which arises merely from sympathy or from fear to return a verdict of guilt," and "a doubt such as may be used to escape the responsibility of a decision." Yet nowhere in Wis JI——Criminal 140 is the jury told the required level of certitude they must reach to convict.

¶79 Second, the instruction could exacerbate the risk that the jury will convict based upon a lesser level of certainty than beyond a reasonable doubt when, after only defining "reasonable doubt," the jury is told not to search for doubt, but to search for "the truth." See Brief of Amicus Curiae Wisconsin State Public Defender at 8. While the adversary system as a whole involves a search for the truth, a juror's duty is to decide whether the State has proven its case beyond a reasonable doubt by examining only the evidence introduced at trial. Oftentimes the evidence seen by a juror is constrained for various reasons including: evidentiary and constitutional rulings made by the circuit court, the availability of witnesses, and strategic decisions of counsel. Instructing jurors to search for the truth but not instructing them that the evidence at trial must convince them to a degree of near certainty may encourage jurors to believe that the truth lies outside of the courtroom. There is no way to accurately "test," and thus we will never know, the impact on jurors of the

7

following words given at the end of Wis JI——Criminal 140: "While it is your duty to give the defendant the benefit of every reasonable doubt, you are not to search for doubt. You are to search for the truth."

¶80 The majority opinion dismisses Trammell's challenges to Wis JI——Criminal 140 based upon the recent consideration given to the instruction by the Criminal Jury Instructions Committee and this court's decision in Avila, where we held that "it is not reasonably likely that the jury understood Wis JI—Criminal 140[], to allow conviction based on proof below the Winship reasonable doubt standard." State v. Avila, 192 Wis. 2d 870, 889, 535 N.W.2d 440 (1995), overruled on other grounds by State v. Gordon, 2003 WI 69, 262 Wis. 2d 380, 663 N.W.2d 765. The majority rightfully places great weight on the Criminal Jury Instructions Committee's examination of Wis JI——Criminal 140 in light of the two recent law review articles and its subsequent decision not to change the text of the instruction. Majority op., ¶27. As we have previously recognized, the criminal jury instructions "'are the product of painstaking effort of an eminently qualified committee of trial judges, lawyers, and legal scholars, designed to accurately state the law and afford a means of uniformity of instructions throughout the state.'" State v. Gilbert, 115 Wis. 2d 371, 379, 340 N.W.2d 511 (1983) (quoting State v. Genova, 77 Wis. 2d 141, 150-51, 252 N.W.2d 380 (1977)). I know the Criminal Jury Instructions Committee has diligently considered whether to change the text of Wis JI—Criminal 140 in the past. I urge them to now consider the

argument that is made here: the interaction of the lack of explanation of the quantum of certainty combined with the directive not to search for doubt but to search for "the truth" potentially confuses and misleads jurors regarding the level of certainty required to convict.

¶81 I therefore encourage the Wisconsin Criminal Jury Instructions Committee to review Wis JI——Criminal 140 in light of this particular challenge and revise Wis JI——Criminal 140 in the interest of justice. For the foregoing reasons, I concur.

¶82 I am authorized to state that Justice ANN WALSH BRADLEY joins this concurrence.

9