[No. B167361. Second Dist., Div. One. Feb. 19, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
DANNY D. JOHNSON, Defendant and Appellant.

**COUNSEL**

Barbara L. Sorem, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Marc E. Turchin and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ORTEGA, J.**—Concluding that the trial court erred in amplifying on the reasonable doubt instruction, we reverse the judgment. Consequently, we do not reach defendant's claim that the trial court erred in refusing to instruct on a "claim-of-right" burglary defense.

### BACKGROUND

After dating for a short while, defendant and the victim became parents of a baby girl. The trio moved into an apartment. Defendant soon left the victim for another woman. Citing physical abuse, the victim obtained a restraining order requiring defendant to stay away from her. Nonetheless, they continued to see each other.

Between December 4, 2002, and February 4, 2003, police responded several times to the victim's claims that defendant continued to harass her and use physical force such as slamming her finger in the apartment bathroom door, pulling her around by the hair, and beating her up. The victim would routinely complain to the police about abuse and then recant.

On February 4, 2003, defendant went into the victim's apartment and removed a stereo and a cordless phone. He destroyed the goods by smashing them on the sidewalk.

When defendant was arrested, he had in his possession a wallet and identification that had been lost by a person who did not know defendant.

A jury convicted defendant of stalking the victim, burglarizing her apartment, and stealing the lost wallet. The trial court imposed an 11-year second strike sentence.

## DISCUSSION

### I

During jury selection, the trial court amplified on the concept of reasonable doubt as follows: "The burden is proof beyond a reasonable doubt. A doubt that has reason to it, not a ridiculous doubt, not a mere possible doubt. Because we all have a possible doubt whether we will be here tomorrow. That's certainly a possibility. We could be run over tonight. God, that would be a horrible thing, but it's a possibility. It's not reasonable for us to think that we will because we plan our lives around the prospect of being alive. We take vacations; we get on airplanes. We do all these things because we have a belief beyond a reasonable doubt that we will be here tomorrow or we will be here in June, in my case, to go to Hawaii on a vacation. But we wouldn't plan our live[]s ahead if we had a reasonable doubt that we would, in fact, be alive."

In *People* v. *Nguyen* (1995) 40 Cal.App.4th 28, 35 [40 Cal.Rptr.2d 840], the prosecutor argued: " 'The standard is reasonable doubt. That is the standard in every single criminal case. And the jails and prisons are full, ladies and gentlemen. [¶] It's a very reachable standard that you use every day in your lives when you make important decisions, decisions about whether you want to get married, decisions that take your life at stake when you change lanes as you're driving. If you have reasonable doubt that you're going to get in a car accident, you don't change lanes. [¶] So it's a standard that you apply in your life. It's a very high standard. And read that instruction, too. I won't paraphrase it because it's a very difficult instruction, but it's not an unattainable standard. It's the standard in every single criminal case.' "

"The prosecutor's argument that people apply a reasonable doubt standard 'every day' and that it is the same standard people customarily use in deciding whether to change lanes trivializes the reasonable doubt standard. It is clear the almost reflexive decision to change lanes while driving is quite different from the reasonable doubt standard in a criminal case. The marriage example is also misleading since the decision to marry is often based on a standard far less than reasonable doubt, as reflected in statistics indicating 33

to 60 percent of all marriages end in divorce. [Citations.]" (*People v. Nguyen, supra,* 40 Cal.App.4th at p. 36.)

"The judgment of a reasonable man in the ordinary affairs of life, however important, is influenced and controlled by the preponderance of evidence. Juries are permitted and instructed to apply the same rule to the determination of civil actions involving rights of property only. But in the decision of a criminal case involving life or liberty, something further is required. . . ." (*People v. Brannon* (1873) 47 Cal. 96, 97.)

The same applies to making decisions to take vacations and get on airplanes. We can all describe situations where people make serious decisions in spite of grave reservations about the outcome. For example, a couple may overextend themselves financially to buy a home in spite of significant and reasonable doubts about whether it will prove to be a wise investment. Such situations cannot be equated to the level of conviction necessary for finding guilt in a criminal case.

■ We are not prepared to say that people planning vacations or scheduling flights engage in a deliberative process to the depth required of jurors or that such people finalize their plans only after persuading themselves that they have an abiding conviction of the wisdom of the endeavor. Nor can we say that people make such decisions while aware of the concept of "beyond a reasonable doubt." Accordingly, per *Brannon,* the trial court's attempt to explain reasonable doubt had the effect of lowering the prosecution's burden of proof.

The *Nguyen* court found the error waived by failure to object and went on to say there was no prejudice because the jury was otherwise properly instructed on reasonable doubt. We must disagree with this part of the *Nguyen* analysis. We quote from a post-*Nguyen* California Supreme Court decision: "Although respondent argues defendant forfeited this claim by failing to object, we find defendant may properly raise the issue under [Penal Code] section 1259, which provides in part: 'The appellate court may also review *any instruction given,* refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby.' " (*People v. Brown* (2003) 31 Cal.4th 518, 539, fn. 7 [3 Cal.Rptr.3d 145, 73 P.3d 1137].) The defendant's substantial rights were affected by an instruction that reduced the prosecution's burden to a preponderance of the evidence. Accordingly, even though defendant did not object below, we reach the issue.

The trial court erred and the error requires reversal of the judgment.

## DISPOSITION

The judgment is reversed. The matter is remanded for a new trial.

Spencer, P. J., and Mallano, J., concurred.