Filed 10/18/22  P. v. Jaramillo CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JAMES PEDRO JARAMILLO,<br><br>Defendant and Appellant. | C094172<br><br>(Super. Ct. No. STK-CR-FDV-2020-0007126) |

This appeal arises from a domestic violence incident that began after defendant James Pedro Jaramillo's anger and frustration with his cellular telephone erupted into violence impacting the mother of defendant's baby and other children who were present in the home.  Following a lengthy trial, the jury found defendant guilty of one count of corporal injury on a spouse, cohabitant, or parent of a child with a prior (Pen. Code, § 273.5, subds. (a), (f)(1)—count 1);[1] two counts of assault with force likely to produce

---

[1]    Undesignated statutory references are to the Penal Code.

1

great bodily injury (§ 245, subd. (a)(4)—counts 2 & 4); one count of infliction of corporal punishment or injury upon a child (§ 273d, subd. (a)—count 3); and one count of misdemeanor child abuse (§ 273a, subd. (b)—count 5); but not guilty of the remaining misdemeanor child abuse count. (§ 273a, subd. (b)—count 6.)

The trial court sentenced defendant to an aggregate prison term of seven years four months, comprised of the upper term of six years for the infliction of corporal punishment or injury upon a child count, plus 16 months consecutive for the corporal injury on a spouse/cohabitant/parent of a child count. Sentences for the assault counts were imposed but stayed pursuant to section 654,[2] and the court sentenced defendant to time served for the child abuse. Defendant timely appealed, and appellate briefing in this matter was completed on July 15, 2022.

On appeal, defendant contends the trial court's extemporaneous comments during its final instructions to the jury diluted the phrase "abiding conviction," resulting in a lowering of the burden of proof in violation of the Fourteenth Amendment. Defendant also asks that we vacate his sentence and remand for resentencing in light of the passage of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567), which altered the methodology for selecting an appropriate triad term. (§ 1170, subd. (b); Stats. 2021, ch. 731, § 1, eff. Jan. 1, 2022.) We conclude defendant has not demonstrated prejudicial error requiring reversal and, accordingly, we will affirm. We will, however, order the trial court to correct the abstract of judgment.

BACKGROUND

This factual recitation is limited in light of the narrow issues raised on appeal.

---

[2] The abstract of judgment failed to identify the length of the terms imposed and stayed, which we will direct the trial court to correct.

A.      *The jury instructions*

After closing arguments that did not significantly address the meaning of the reasonable doubt standard, the trial court distributed copies of the jury instructions. It explained the jury could take notes on them but should disregard any deleted sections and "[o]nly consider the final version of the instructions in your deliberation." The court then directed the jury to follow the law as explained by the court, follow the instructions of the court, and consider all the instructions together.

As to the presumption of innocence and the requirement that the People prove the charges beyond a reasonable doubt, the court stated: "The fact that a criminal charge has been filed against the defendant is not evidence that the charge is the true [*sic*]. You must not be biased against the defendant just because he has been arrested, charged with a crime or brought to trial. A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove the defendant guilty beyond a reasonable doubt. Whenever I tell you that the People must prove something, I mean they must prove it beyond a reasonable doubt."

The court continued: "Proof beyond a reasonable doubt, well, what is that? This is the only definition I can give you. Somebody says I want more. There isn't. This is the definition used in all 58 counties and you don't touch it. It is this: [¶] Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. *An abiding, the only definition is a lasting conviction. Something where you're looking at, yeah, I have a lasting conviction. It's two minutes to noon, okay, fine, I may change my mind, but for now I'm okay. It's a lasting conviction.*" (Italics added.)

"The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that has been received throughout the entire trial. Unless the evidence proves

3

the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and find him not guilty."

Finally, the court identified several other instances in which the People had the burden of proving various things beyond a reasonable doubt, to wit: essential facts from circumstantial evidence; that defendant did not act justifiably in disciplining the child victim from count 3; that defendant did not act in self-defense in counts 1 through 4; and defendant's guilt of the charges as contrasted with disposition evidence.

B.      *Defendant's aggravated sentence*

The probation department's presentence report recommended prison without specifying a term. The report identified the following elements in aggravation: (1) "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness" (Cal. Rules of Court, rule 4.421(a)(1));[3] (2) "[t]he victim was particularly vulnerable" because he was a child (rule 4.421(a)(3)); (3) "[t]he defendant has engaged in violent conduct that indicates a serious danger to society" (rule 4.421(b)(1)); (4) that defendant's prior convictions were "numerous or of increasing seriousness" (rule 4.421(b)(2)); (5) that defendant had served a prior prison term (rule 4.421(b)(3)); and (6) that defendant was on parole when the offense was committed. (Rule 4.421(b)(4).) The report noted one circumstance in mitigation, stating defendant's performance on parole had been satisfactory, but handwritten notes on the report reflect the trial court questioned the applicability of this factor.

At sentencing, the People submitted on their sentencing brief, which argued for the imposition of the upper term, repeating the aggravating factors identified by probation and adding that the crime involved criminal sophistication (rule 4.421(a)(8)) and that

---

**3**      Undesignated rules references are to the California Rules of Court.

defendant took advantage of a position of trust. (Rule 4.421(a)(11).) The People contended there were no factors in mitigation.

The trial court also heard statements from the current and former victims, who stressed defendant's narcissistic tendencies and that they suffered continuing harm from defendant's actions, including that they and their children felt unsafe and had taken protective measures including: installing security cameras, selling a home, and relocating. Further, they stressed defendant had not changed, despite his prior sentence, and implored the court to protect them and the public from him.

Defendant argued he would lose his livelihood as a longshoreman if sent to prison and that during his prior incarceration he had been released once a month for 24 hours to keep his job and related benefits. Defendant acknowledged there were multiple child victims in the case, but argued his children would also be impacted by the court's decision and would become a burden to the system without him.

Thereafter, the trial court stated it had initially leaned towards the midterm but had elected to impose the upper term after listening to the victim impact statements. The court first generally discussed the aggravating factors, highlighting defendant's numerous priors, that one victim was the mother of his baby, who also was present, that the mother was vulnerable, that defendant's prior conduct relayed at trial had been "deeply disturbing" and "chilling," and that defendant had engaged in "aggressive, violent conduct." The court was concerned about sentencing him to anything less than the maximum term because defendant would serve only about half of whatever sentence it imposed. Further, the court would not be granting defendant monthly releases because defendant had not reformed and the court would not repeat that accommodation.

In response to defendant's objection that the trial court had been improperly moved by the former victims' statements, the court explained it was not punishing defendant a second time for his prior action of choking one of the former victims, for which he had already served two years. Rather, defendant had not addressed nor

5

improved his pattern of abuse and was merely lucky that his throwing a child over a railing, causing him to hit his head and back on bricks did not result in a worse injury. Defendant was much stronger than the victims and should have known better.

Finally, the court summarized its reasons for deciding to impose an upper term, explaining: "So in terms of the sentence here, okay, because we have to get the numbers, Count 3 is the principal term. That's the longest term, the victim is [L.D.], I will sentence you to the upper term of six years. There have to be reasons. It's not gee whiz, the evidence was compelling. The reasons are these: We have [L.D.] is a vulnerable victim under [rule] 4.421(a)(3). You were in a position of trust because you're the adult male in the house. You're the commandant. You're the guy in charge, going off on a phone, hitting people, not acceptable. Again, you should know that. Okay. If you don't know it before, after all of these cases, it shouldn't come up, hey, man, I can't do this. There's going to be a problem. I will get jammed up on this. I will get stuck. That happens. Okay. So that's [rule] 4.421(a)(11), position of trust. The [rule] 4.421(b)(2) you have a lot of convictions. Okay. That doesn't help in this case because a lot of convictions means somebody's been here before, and it didn't work out, so we're back again. [¶] You have a prior prison term we talked about. At least a two year sentence, that's [rule] 4.421(b)(3), and then I think there's an argument that you were on parole when this occurred. This is [rule] 4.421(b)(4). That's the reason I am making it legally, along with the victims' comments here and the evidence, the upper term of six years. That's Count 3."

DISCUSSION

I

*The Jury Instructions*

Defendant contends the trial court's improvised definition of "abiding conviction" diluted the reasonable doubt standard, thereby violating his rights under the Fourteenth Amendment. Recognizing his failure to object below, he argues the trial court's error

6

impacted his substantial rights, thereby excusing his lack of objection (§ 1259) and, alternatively, that we should exercise our discretion to consider this important constitutional issue. To consider defendant's section 1259 argument, we must evaluate his claim on the merits. Having done so, we do not agree that he is entitled to reversal.

"The Due Process Clause requires the government to prove a criminal defendant's guilt beyond a reasonable doubt, and trial courts must avoid [instructing in such a way] so as to lead the jury to convict on a lesser showing than due process requires." (*Victor v. Nebraska* (1994) 511 U.S. 1, 22 [127 L.Ed.2d 583, 600-601].) Where a court has misdefined the reasonable doubt standard in a manner that improperly lowers the prosecution's burden of proof, reversal is required. (*People v. Aranda* (2012) 55 Cal.4th 342, 365.) "An instruction that effectively lowers the prosecution's burden of proving guilt beyond a reasonable doubt is structural error because it 'vitiates all the jury's findings' and its effect on the verdict is 'necessarily unquantifiable and determinate.' [Citation.]" (*Ibid.*, italics omitted.) But, not every error in defining reasonable doubt is structural; most are subject to harmless error review. (*Id.* at pp. 365-366.) To determine whether the error is structural, "we ask whether the error rendered the trial 'fundamentally unfair or an unreliable vehicle for determining guilt or innocence' [citation], or whether the effect of the error is 'necessarily unquantifiable and indeterminate.' " (*Id.* at p. 366, italics omitted.) That is, we assess " 'whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on' insufficient proof. ([*Victor, supra*,] at p. 6.)" (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 840 (*Daveggio and Michaud*).)

We determine the correctness of jury instructions from the entire charge of the court, not from isolated parts of an instruction or from a particular instruction. (*People v. Carrington* (2009) 47 Cal.4th 145, 192, citing *Estelle v. McGuire* (1991) 502 U.S. 62, 72 [116 L.Ed.2d 385, 399].) The Constitution does not require particular words in instructing the jury on the burden of proof, but it does require that, taken as a whole, the

7

instructions correctly convey the concept of reasonable doubt. (*Victor v. Nebraska*, *supra*, 511 U.S. at p. 5.) "We interpret the instructions so as to support the judgment if they are reasonably susceptible to such interpretation . . . . [Citations.]" (*People v. Vang* (2009) 171 Cal.App.4th 1120, 1129.) In addition, when oral instructions conflict with written instructions, we presume the jury followed the written instructions. (*People v. Grimes* (2016) 1 Cal.5th 698, 729.)

Here, defendant complains that in the middle of an otherwise correct recitation of CALCRIM No. 220 (the unchallenged jury instruction on reasonable doubt), the trial court erred in commenting, "An abiding, the only definition is a lasting conviction. Something where you're looking at, yeah, I have a lasting conviction. It's two minutes to noon, okay, fine, I may change my mind, but for now I'm okay. It's a lasting conviction." Although the trial court's extemporaneous "two minutes to noon" hypothetical is somewhat unclear, we do not believe it reasonably likely that the jury understood those comments to dilute the reasonable doubt standard as articulated elsewhere by the court. (*Daveggio and Michaud, supra*, 4 Cal.5th at p. 840.)

First, as recognized by the California Supreme Court, an " 'abiding conviction' " is a conviction of a "lasting, permanent nature." (*People v. Brigham* (1979) 25 Cal.3d 283, 290.) Thus, the court's description of an abiding conviction as "lasting" was an accurate statement of the law. Defendant conceded as much in his opening brief.

This leaves the trial court's amorphous, ad-libbed comment, "It's two minutes to noon, okay, fine, I may change my mind, but for now I'm okay." We can only speculate about the meaning of this statement made immediately after the trial court stressed the importance of not altering the reasonable doubt definition and in the middle of relaying that very instruction. Nonetheless, we do not find it reasonably likely the jury understood the remark to lower the People's burden of proof. (*Daveggio and Michaud, supra*, 4 Cal.5th at p. 840.) Nor do we find it comparable to the cases cited by defendant in which trial courts have equated reasonable doubt determinations to decisions made in everyday

8

life.  (*People v. Johnson* (2004) 115 Cal.App.4th 1169; *People v. Johnson* (2004) 119 Cal.App.4th 976.)  The court's short, ambiguous statement does not equate the reasonable doubt determination to an everyday decision.

Finally, we highlight that the trial court's statement was not repeated in the properly worded written instructions, which were provided to the jury before the court's oral instructions so that they could follow along, and which the jury had available to consult during deliberations.  We presume the jury followed these written instructions, especially given that they were instructed to "[o]nly consider the final version of the instructions in your deliberation."  (See *People v. Grimes, supra*, 1 Cal.5th at p. 729.)

II

*Senate Bill 567*

Defendant alternatively asks that we vacate his sentence and remand for a full resentencing hearing in light of the legislative changes brought about by Senate Bill 567.  The People agree that Senate Bill 567 applies retroactively, but argue resentencing is unnecessary because the jury would have found at least two aggravating factors true beyond a reasonable doubt. We concur that resentencing is unnecessary.

Effective January 1, 2022, when a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the trial court must impose a term not exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term exceeding the middle term and the facts underlying those aggravating circumstances:  (1) have been stipulated to by the defendant; (2) have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial; or (3) relate to the defendant's prior convictions and are based on a certified record of conviction. (§ 1170, subd. (b)(1)-(3);  Stats. 2021, ch. 731.)

The People correctly concede that the amended version of section 1170, subdivision (b) applies retroactively in this case as an ameliorative change in the law applicable to all nonfinal convictions on appeal.  (See *In re Estrada* (1965) 63 Cal.2d

9

740, 745; *People v. Flores* (2022) 75 Cal.App.5th 495, 500, review den. June 15, 2022, S274232 [holding Senate Bill 567 applies retroactively to nonfinal convictions on appeal].) Thus, we must determine whether defendant is correct that these legislative changes require remand for resentencing or whether we may deem the trial court's failure to apply the new legislative methodology harmless in this particular case.

Here, the trial court imposed the upper term after identifying seven factors supporting that term. The court explained the upper term was justified because: (1) the victim was vulnerable (rule 4.421(a)(3)); (2) defendant had been in a position of trust (rule 4.421(a)(11)); (3) defendant had numerous prior convictions (rule 4.421(b)(2)); (4) defendant had served a prior prison term (rule 4.421(b)(3)); (5) defendant was on parole when the offense occurred (rule 4.421(b)(4)); (6) "the victims' comments"; and (7) "the evidence."

Defendant initially conceded on appeal that the third and fourth aggravating factors could be proven by his certified record of conviction, which could legally support the imposition of an upper term. However, on reply he argues that because certified records of conviction are not part of the record on appeal, we must determine that a jury would have found these circumstances were not true beyond a reasonable doubt. This ignores that People's exhibit 41, which was admitted at trial, is the certified transcript of the plea hearing wherein defendant admitted to having committed both misdemeanor and felony violations of section 273.5 and violating a criminal protective order (§ 166, subd. (c)(1)) in exchange for a two-year prison sentence. Accordingly, the record reflects defendant's admission to multiple violations of law for which he received a two-year prison sentence. Use of these facts complies with amended section 1170, subdivision (b)(2).

Moreover, assuming arguendo that defendant's admission was not broad enough to cover triad sentencing under section 1170, subdivision (b), we note two things. First, defendant admitted at trial he had pleaded guilty or no contest to two prior section 273.5

charges, as well as other charges,[4] and had served a prison sentence as a result. Thereafter, the jury determined beyond a reasonable doubt that defendant committed the section 273.5 violation from count 1 and found true the allegations that he had previously been convicted of felony and misdemeanor violations of section 273.5. We recognize there may be limitations on using these prior convictions, which had been used to enhance count 1, to also impose the upper term for count 3. Nonetheless, we find beyond a reasonable doubt that, in light of exhibit 41 and defendant's testimony, had the jury been asked to determine the truth of defendant's remaining convictions for violating the criminal protective order, growing marijuana, and stealing utilities, it would have found those convictions true beyond a reasonable doubt.

Second, as to the prison prior, we find beyond a reasonable doubt that the jury would have used exhibit 41, as well as the repeated trial testimony that defendant had been to prison, to find beyond a reasonable doubt that he had served a prior prison term. Defendant conceded on the stand that he had been to prison for felony domestic violence, growing marijuana, and stealing utilities. Thus, following the reasoning of *People v. Flores, supra*, 75 Cal.App.5th 495, these aggravating factors are enough to uphold the imposition of the upper term without a need to remand. (*Id*. at pp. 500-501 [failure to have facts supporting aggravating factors determined by a jury is harmless error where appellate court concludes a single aggravating factor would have been found true beyond a reasonable doubt]; *People v. Sandoval* (2007) 41 Cal.4th 825, 839; but see *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1112 [suggesting a *Watson*[5] review of state law error is also required] (*Zabelle*).)

---

**4**      Defendant testified he had served time for the two corporal injury counts, growing marijuana, and stealing utilities.

**5**      *People v. Watson* (1956) 46 Cal.2d 818.

Because this area of law is still developing, however, we also will consider whether the trial court would have imposed the upper term sentence in the absence of the state law error. (*Zabelle, supra*, 80 Cal.App.5th at p. 1112.) Resolution of this question requires we ask two questions to determine whether the trial court's state law errors were harmless. First, we evaluate each aggravating factor to determine "whether it is reasonably probable that the jury would have found the fact not true." (*Ibid.*) Second, we consider the surviving aggravating factors to determine "whether it is reasonably probable that the trial court would have chosen a lesser sentence had it considered only these aggravating facts." (*Ibid.*)

Here, considering the factors derived from defendant's criminal history,[6] we find it is reasonably probable the jury would have determined beyond a reasonable doubt that defendant had numerous prior convictions (rule 4.421(b)(2)); had served a prison prior (rule 4.421(b)(3)); and had committed the crime when he was on parole. (Rule 4.421(b)(4).) (*Zabelle, supra*, 80 Cal.App.5th at p. 1112.) The veracity of these aggravating factors were established by trial testimony, as we have previously explained. While we recognize the appellate record does not necessarily reflect all evidence that may have been presented had the aggravating circumstances been submitted to a jury (*People v. Sandoval, supra*, 41 Cal.4th at p. 839), there was sufficient incentive for defendant to complain about any inaccuracies contained within the probation report, which was prepared pursuant to an official duty through reference to official records. (See Evid. Code, § 664 [official duty presumed regularly performed].) Had the official records been wrong, there would have been no strategic reason for defendant not to point out the error.

---

**6** This criminal history includes not only the offenses and prior prison term defendant admitted to in the certified record and trial testimony as discussed herein *ante*, but also other felony convictions identified in the probation report.

Further, we find it is reasonably probable the jury would have found beyond a reasonable doubt that the victim L.D. was vulnerable (rule 4.421(a)(3)) and that defendant had occupied a position of trust. (Rule 4.421(a)(11).) Evidence presented at trial established that L.D. was a 14-year-old who weighed 120 pounds, contrasted with defendant who was 44 years old, weighed at least 200 pounds, and was a recreational bodybuilder. L.D. told defendant to get off his mom, and defendant punched L.D. in the face at least once with a closed fist and then threw him outside and over a railing causing him to fall onto bricks where L.D. hit and injured his head and lower back. The great disparity in physical size and strength is further demonstrated by defendant's own testimony he was able to put L.D. over one shoulder and hold him there with one hand, walk to and open the door, and then toss L.D. outside.

Further, defendant occupied a position of trust, as conceded in defendant's reply brief. Defendant had recently had a child with L.D.'s mother and served as a kind of stepdad, which was further supported by defendant's own testimony that he was the sole breadwinner, paid many of the household bills, and helped discipline L.D. The nature of this relationship was underscored by defendant's asserted defense that he had been reasonably disciplining L.D. As such, it is reasonably probable that the jury would have determined beyond a reasonable doubt that these aggravating factors were true.

The trial court's final two factors: the statements of the victims and the "evidence," are more amorphous. Here, the victims stressed defendant's behavior had not changed and that his narcissistic and dangerous tendencies endured, greatly impacting their lives and the lives of their children. Moreover, the victims implored the court to stop the cycle and keep defendant from harming them or others. Many of these comments fall within rule 4.421(b)(1), that "[t]he defendant has engaged in violent conduct that indicates a serious danger to society," and rule 4.421(b)(2), that defendant's prior convictions were "numerous or of increasing seriousness." Both these factors were identified by the probation department, although only the latter was mentioned by the

13

court.  Moreover, when the court defended its reliance on the victims' statements as warranting imposition of the upper term, it focused on defendant's pattern of abuse that had not been addressed, nor improved, and highlighted that defendant was merely lucky that in this instance, his throwing a child over a railing, causing him to hit his head and back on bricks, did not result in a worse injury.  These justifications align with the court's reliance on rule 4.421(b)(2), the application of which we already have upheld.

Therefore, we conclude it is reasonably probable that the jury would have found six of the seven factors supporting the trial court's decision to impose the upper term were true.  Given the court's lack of explanation regarding the "evidence," we cannot separately analyze whether a jury would have found the unspecified "evidence" true with the exception of the analysis already conducted.  Nonetheless, considering only the first six of the seven justifications, we do not think there is a reasonable probability that defendant would have received a more lenient sentence had the trial court limited its consideration to those aggravating factors.  (*Zabelle, supra*, 80 Cal.App.5th at p. 1112.)  This is especially true where the only mitigating factor (satisfactory performance on parole) was questioned by the court because defendant had been on parole when the offense occurred.

## DISPOSITION

The judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment reflecting the three-year sentences imposed on counts 2 and 4 that

14

were stayed pursuant to section 654.  The court shall forward a certified copy of that document to the California Department of Corrections and Rehabilitation.


      KRAUSE      , J.


We concur:


      HULL      , Acting P. J.


      EARL      , J.