Filed 12/2/24  P. v. Jaramillo CA3
Opinion following transfer from Supreme Court

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C094172 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CR-FDV-2020-0007126) |
| v. | [OPINION ON TRANSFER] |
| JAMES PEDRO JARAMILLO, | |
| Defendant and Appellant. | |

This appeal arises from a domestic violence incident that began after defendant James Pedro Jaramillo's anger and frustration with his cellular telephone erupted into violence impacting the mother of defendant's baby and other children who were present in the home.  Following a lengthy trial, the jury found defendant guilty of one count of corporal injury on a spouse, cohabitant, or parent of a child with a prior (Pen. Code,

1

§ 273.5, subds. (a), (f)(1)—count 1);[1] two counts of assault with force likely to produce great bodily injury (§ 245, subd. (a)(4)—counts 2 & 4); one count of infliction of corporal punishment or injury upon a child (§ 273d, subd. (a)—count 3); and one count of misdemeanor child abuse (§ 273a, subd. (b)—count 5); but not guilty of the remaining misdemeanor child abuse count. (§ 273a, subd. (b)—count 6.)

The trial court sentenced defendant to an aggregate prison term of seven years four months, comprised of the upper term of six years for the infliction of corporal punishment or injury upon a child count, plus 16 months consecutive for the corporal injury on a spouse/cohabitant/parent of a child count. Sentences for the assault counts were imposed but stayed pursuant to section 654,[2] and the court sentenced defendant to time served for the child abuse.

Defendant timely appealed contending the trial court's extemporaneous comments during its final instructions to the jury diluted the phrase "abiding conviction," resulting in a lowering of the burden of proof in violation of the Fourteenth Amendment and that this court should vacate his sentence and remand for resentencing in light of the passage of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567), which altered the methodology for selecting an appropriate triad term. (§ 1170, subd. (b); Stats. 2021, ch. 731, § 1, eff. Jan. 1, 2022.) In an unpublished opinion issued October 18, 2022, we concluded defendant had not demonstrated prejudicial error requiring reversal and, accordingly, we affirmed. (*People v. Jaramillo* (Oct. 18, 2022; C094172) [nonpub. opn] (*Jaramillo*).)

Defendant sought review in the California Supreme Court, which ordered this court to vacate the previous opinion and reconsider the matter in light of *People v. Lynch*

---

[1] Undesignated statutory references are to the Penal Code.

[2] The abstract of judgment failed to identify the length of the terms imposed and stayed, which we will direct the trial court to correct.

(2024) 16 Cal.5th 730 (*Lynch*). Having done so, we now conclude that remand for a resentencing hearing is required. We will otherwise affirm the judgment.

## BACKGROUND

This factual recitation is limited in light of the narrow issues raised on appeal.

A. *The Jury Instructions*

After closing arguments that did not significantly address the meaning of the reasonable doubt standard, the trial court distributed copies of the jury instructions. It explained the jury could take notes on them but should disregard any deleted sections and "[o]nly consider the final version of the instructions in your deliberation." The court then directed the jury to follow the law as explained by the court, follow the instructions of the court, and consider all the instructions together.

As to the presumption of innocence and the requirement that the People prove the charges beyond a reasonable doubt, the trial court stated: "The fact that a criminal charge has been filed against the defendant is not evidence that the charge is the true [*sic*]. You must not be biased against the defendant just because he has been arrested, charged with a crime or brought to trial. A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove the defendant guilty beyond a reasonable doubt. Whenever I tell you that the People must prove something, I mean they must prove it beyond a reasonable doubt."

The trial court continued: "Proof beyond a reasonable doubt, well, what is that? This is the only definition I can give you. Somebody says I want more. There isn't. This is the definition used in all 58 counties and you don't touch it. It is this: [¶] Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. *An abiding, the only definition is a lasting conviction. Something where you're looking at, yeah, I have a lasting conviction. It's two minutes to noon, okay, fine, I may change my mind, but for now I'm okay. It's a lasting conviction.*" (Italics added.)

3

"The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.  In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that has been received throughout the entire trial.  Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and find him not guilty."

Finally, the trial court identified several other instances in which the People had the burden of proving various things beyond a reasonable doubt, to wit:  essential facts from circumstantial evidence; that defendant did not act justifiably in disciplining the child victim from count 3; that defendant did not act in self-defense in counts 1 through 4; and defendant's guilt of the charges as contrasted with disposition evidence.

B.       *Defendant's Aggravated Sentence*

The probation department's presentence report recommended prison without specifying a term.  The report identified the following elements in aggravation:  (1) "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness" (Cal. Rules of Court, rule 4.421(a)(1));[3] (2) "[t]he victim was particularly vulnerable" because he was a child (rule 4.421(a)(3)); (3) "[t]he defendant has engaged in violent conduct that indicates a serious danger to society" (rule 4.421(b)(1)); (4) that defendant's prior convictions were "numerous or of increasing seriousness" (rule 4.421(b)(2)); (5) that defendant had served a prior prison term (rule 4.421(b)(3)); and (6) that defendant was on parole when the offense was committed.  (Rule 4.421(b)(4).)  The report noted one circumstance in mitigation, stating defendant's performance on parole had been satisfactory, but

---

[3]       Undesignated rules references are to the California Rules of Court.

handwritten notes on the report reflect that the trial court questioned the applicability of this factor.

At sentencing, the People submitted on their sentencing brief, which argued for the imposition of the upper term, repeating the aggravating factors identified by probation and adding that the crime involved criminal sophistication (rule 4.421(a)(8)) and that defendant took advantage of a position of trust. (Rule 4.421(a)(11).) The People contended there were no factors in mitigation.

The trial court also heard statements from the current and former victims, who stressed defendant's narcissistic tendencies and that they suffered continuing harm from defendant's actions, including that they and their children felt unsafe and had taken protective measures including: installing security cameras, selling a home, and relocating. Further, they stressed defendant had not changed, despite his prior sentence, and implored the court to protect them and the public from him.

Defendant argued he would lose his livelihood as a longshoreman if sent to prison and that during his prior incarceration, he had been released once a month for 24 hours to keep his job and related benefits. Defendant acknowledged there were multiple child victims in the case, but argued his children would also be impacted by the court's decision and would become a burden to the system without him.

Thereafter, the trial court stated it had initially leaned towards the midterm but had elected to impose the upper term after listening to the victim impact statements. The court first generally discussed the aggravating factors, highlighting defendant's numerous priors, that one victim was the mother of his baby, who also was present, that the mother was vulnerable, that defendant's prior conduct relayed at trial had been "deeply disturbing" and "chilling," and that defendant had engaged in "aggressive, violent conduct." The court was concerned about sentencing him to anything less than the maximum term because defendant would serve only about half of whatever sentence it

5

imposed. Further, the court would not be granting defendant monthly releases because defendant had not reformed and the court would not repeat that accommodation.

In response to defendant's objection that the trial court had been improperly moved by the former victims' statements, the court explained it was not punishing defendant a second time for his prior action of choking one of the former victims, for which he had already served two years. Rather, defendant had not addressed nor improved his pattern of abuse and was merely lucky that his throwing a child over a railing, causing him to hit his head and back on bricks did not result in a worse injury. Defendant was much stronger than the victims and should have known better.

Finally, the trial court summarized its reasons for deciding to impose an upper term, explaining: "So in terms of the sentence here, okay, because we have to get the numbers, Count 3 is the principal term. That's the longest term, the victim is [L.D.], I will sentence you to the upper term of six years. There have to be reasons. It's not gee whiz, the evidence was compelling. The reasons are these: We have [L.D.] is a vulnerable victim under [rule] 4.421(a)(3). You were in a position of trust because you're the adult male in the house. You're the commandant. You're the guy in charge, going off on a phone, hitting people, not acceptable. Again, you should know that. Okay. If you don't know it before, after all of these cases, it shouldn't come up, hey, man, I can't do this. There's going to be a problem. I will get jammed up on this. I will get stuck. That happens. Okay. So that's [rule] 4.421(a)(11), position of trust. The [rule] 4.421(b)(2) you have a lot of convictions. Okay. That doesn't help in this case because a lot of convictions means somebody's been here before, and it didn't work out, so we're back again. [¶] You have a prior prison term we talked about. At least a two year sentence, that's [rule] 4.421(b)(3), and then I think there's an argument that you were on parole when this occurred. This is [rule] 4.421(b)(4). That's the reason I am making it legally, along with the victims' comments here and the evidence, the upper term of six years. That's Count 3."

DISCUSSION

I

*The Jury Instructions*

Our previous analysis as to the propriety of defendant's jury instructions has not changed and is reproduced herein in total. Defendant contends that the trial court's improvised definition of "abiding conviction" diluted the reasonable doubt standard, thereby violating his rights under the Fourteenth Amendment. Recognizing his failure to object below, he argues that the trial court's error impacted his substantial rights, thereby excusing his lack of objection (§ 1259) and, alternatively, that we should exercise our discretion to consider this important constitutional issue. To consider defendant's section 1259 argument, we must evaluate his claim on the merits. Having done so, we do not agree that he is entitled to reversal.

"The Due Process Clause requires the government to prove a criminal defendant's guilt beyond a reasonable doubt, and trial courts must avoid [instructing in such a way] so as to lead the jury to convict on a lesser showing than due process requires." (*Victor v. Nebraska* (1994) 511 U.S. 1, 22.) Where a court has misdefined the reasonable doubt standard in a manner that improperly lowers the prosecution's burden of proof, reversal is required. (*People v. Aranda* (2012) 55 Cal.4th 342, 365.) "An instruction that effectively lowers the prosecution's burden of proving guilt beyond a reasonable doubt is structural error because it 'vitiates all the jury's findings' and its effect on the verdict is 'necessarily unquantifiable and determinate.' [Citation.]" (*Ibid.*, italics omitted.) But, not every error in defining reasonable doubt is structural; most are subject to harmless error review. (*Id*. at pp. 365-366.) To determine whether the error is structural, "we ask whether the error rendered the trial 'fundamentally unfair or an unreliable vehicle for determining guilt or innocence' [citation], or whether the effect of the error is 'necessarily unquantifiable and indeterminate.' " (*Id*. at p. 366, italics omitted.) That is, we assess " 'whether there is a reasonable likelihood that the jury understood the

7

instructions to allow conviction based on' insufficient proof. ([*Victor, supra*,] at p. 6.)" (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 840 (*Daveggio and Michaud*).)

We determine the correctness of jury instructions from the entire charge of the court, not from isolated parts of an instruction or from a particular instruction. (*People v. Carrington* (2009) 47 Cal.4th 145, 192, citing *Estelle v. McGuire* (1991) 502 U.S. 62, 72.) The Constitution does not require particular words in instructing the jury on the burden of proof, but it does require that, taken as a whole, the instructions correctly convey the concept of reasonable doubt. (*Victor v. Nebraska, supra*, 511 U.S. at p. 5.) "We interpret the instructions so as to support the judgment if they are reasonably susceptible to such interpretation . . . . [Citations.]" (*People v. Vang* (2009) 171 Cal.App.4th 1120, 1129.) In addition, when oral instructions conflict with written instructions, we presume the jury followed the written instructions. (*People v. Grimes* (2016) 1 Cal.5th 698, 729.)

Here, defendant complains that in the middle of an otherwise correct recitation of CALCRIM No. 220 (the unchallenged jury instruction on reasonable doubt), the trial court erred in commenting, "An abiding, the only definition is a lasting conviction. Something where you're looking at, yeah, I have a lasting conviction. It's two minutes to noon, okay, fine, I may change my mind, but for now I'm okay. It's a lasting conviction." Although the trial court's extemporaneous "two minutes to noon" hypothetical is somewhat unclear, we do not believe it reasonably likely that the jury understood those comments to dilute the reasonable doubt standard as articulated elsewhere by the court. (*Daveggio and Michaud, supra*, 4 Cal.5th at p. 840.)

First, as recognized by the California Supreme Court, an " 'abiding conviction' " is a conviction of a "lasting, permanent nature." (*People v. Brigham* (1979) 25 Cal.3d 283, 290.) Thus, the trial court's description of an abiding conviction as "lasting" was an accurate statement of the law. Defendant conceded as much in his opening brief.

8

This leaves the trial court's amorphous, ad-libbed comment, "It's two minutes to noon, okay, fine, I may change my mind, but for now I'm okay." We can only speculate about the meaning of this statement made immediately after the trial court stressed the importance of not altering the reasonable doubt definition and in the middle of relaying that very instruction. Nonetheless, we do not find it reasonably likely the jury understood the remark to lower the People's burden of proof. (*Daveggio and Michaud, supra*, 4 Cal.5th at p. 840.) Nor do we find it comparable to the cases cited by defendant in which trial courts have equated reasonable doubt determinations to decisions made in everyday life. (*People v. Johnson* (2004) 115 Cal.App.4th 1169; *People v. Johnson* (2004) 119 Cal.App.4th 976.) The court's short, ambiguous statement does not equate the reasonable doubt determination to an everyday decision.

Finally, we highlight that the trial court's statement was not repeated in the properly worded written instructions, which were provided to the jury before the court's oral instructions so that they could follow along, and which the jury had available to consult during deliberations. We presume the jury followed these written instructions, especially given that they were instructed to "[o]nly consider the final version of the instructions in your deliberation." (See *People v. Grimes, supra*, 1 Cal.5th at p. 729.)

II

*Senate Bill 567*

In our previous opinion, this court determined that while Senate Bill 567 applied retroactively to defendant's nonfinal judgment, (*Jaramillo, supra*, C094172 ) remand for resentencing was not required because the jury would have found at least two aggravating factors true beyond a reasonable doubt thus satisfying constitutional considerations (*ibid.*), and as to the state law error, it was not reasonably probable that defendant would have received a different sentence in light of our conclusion that six of the seven aggravating factors relied upon by the trial court either complied with the law or that it was reasonably probable the jury would have determined they were true. (*Ibid.*) The

9

California Supreme Court ordered this court to reconsider defendant's request for resentencing in light of *Lynch, supra*, 16 Cal.5th 730. Having done so, we now conclude that we must reverse defendant's sentence and remand for a resentencing in compliance with Senate Bill 567.

As explained in *Lynch*, "The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment's due process clause, 'provides that those "accused" of a "crime" have the right to a trial "by an impartial jury." This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt.' [Citations.] In the context of California's determinate sentencing scheme, *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*) held that, 'under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence.' (*Id*. at p. 281.) 'Inhering in that guarantee is an assurance that a guilty verdict will issue only from a unanimous jury.' " (*Lynch, supra*, 16 Cal.5th at p. 742.)

"Effective January 1, 2022, Penal Code section 1170, subdivision (b) (hereafter section 1170[, subdivision] (b)) was amended to prohibit imposition of an upper term sentence unless aggravating circumstances justify that term and the facts underlying any such circumstance, other than a prior conviction, 'have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.' (§ 1170[, subdivision] (b)(2), as amended by Stats. 2021, ch. 731, § 1.3.) Allegations of prior convictions may be tried by the court alone and proven by certified records of conviction. (§ 1170[, subdivision] (b)(3).)" (*Lynch, supra*, 16 Cal.5th at p. 742, fn. omitted.) This amendment has been uniformly applied retroactively to defendants whose judgments were not final on direct appeal at the time the statute took effect. (*Id.* at pp. 742, 746.)

What remained was how to decide whether remand for resentencing would be required.  (*Lynch, supra*, 16 Cal.5th at pp. 742, 746.)  In *Lynch*, the high court held "that a court reviewing a case where the former version of section 1170[, subdivision] (b) was employed must apply the *Chapman* standard of review.  (*Chapman v. California* (1967) 386 U.S. 18 (*Chapman*).)"  (*Id*. at pp. 742-743.)  "Accordingly, in a case where the judgment is not yet final, a sentence imposed under former section 1170[, subdivision] (b) must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute. (§ 1170[, subdivisions] (b)(2), (3).)"  (*Id*. p. 743; see also *id*. at p. 768.)

Here, the trial court imposed the upper term after identifying seven factors supporting that term.  The court explained that the upper term was justified because:  (1) the victim was vulnerable (rule 4.421(a)(3)); (2) defendant had been in a position of trust (rule 4.421(a)(11)); (3) defendant had numerous prior convictions (rule 4.421(b)(2)); (4) defendant had served a prior prison term (rule 4.421(b)(3)); (5) defendant was on parole when the offense occurred (rule 4.421(b)(4)); (6) "the victims' comments"; and (7) "the evidence."

Given *Lynch's* directive that this court must find beyond a reasonable doubt that each of these factors either complies with the amendments to section 1170, subdivision (b) or would have been found by a jury beyond a reasonable doubt (*Lynch, supra*, 16 Cal.5th at pp. 743, 768), we will focus on factor seven, that being the trial court's amorphous reference to "the evidence."  Notably for purposes of this analysis, the trial court did not explain specifically what "evidence" it was referencing as further justifying the imposition of an upper-term sentence.  Therefore, we cannot separately analyze whether a jury would have found the unspecified "evidence" true beyond a reasonable

11

doubt.  Under *Lynch*, this mandates reversal of defendant's sentence and remand for a resentencing hearing.  (*Id*. at p. 768.)

Moreover, as explained in *Lynch*, the "proceedings on remand are to be conducted in accordance with the current statutory requirements and the defendant given the opportunity for the jury trial, of which he was deprived."  (*Lynch, supra*, 16 Cal.5th at p. 777.)  "On remand, the parties remain free to introduce at trial all relevant evidence to support or contest the factual support for the aggravating circumstances set out in the California Rules of Court.  The court may rely on any properly proven aggravating facts, including prior convictions or facts necessarily found by the jury to support a verdict on underlying counts and enhancements.  The court retains its discretion to impose an upper term sentence if it concludes that one or more properly proved circumstances justify such a sentence.  (§ 1170[,subdivision] (b)(2).)  If it cannot so conclude, it may impose no more than a middle term. . . ."  (*Id*. at pp. 777-778.)

DISPOSITION

Defendant's sentence is reversed, and the matter remanded for resentencing consistent with this opinion.  Following resentencing, the trial court shall prepare a new abstract of judgment and forward a certified copy of that document to the Department of Corrections and Rehabilitation.  The judgment is otherwise affirmed.


_____\s_____,
Krause, J.


We concur:


_____\s_____,
Earl, P. J.


_____\s_____,
Hull, J.


13