Filed 12/19/25  P. v. Salabert CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B338199 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA483444) |
| v. | |
| LUIS FERNANDO SALABERT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark Hanasono, Judge.  Affirmed.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Seth P. McCutcheon and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Luis Fernando Salabert (Salabert) was convicted by a jury of murder, attempted murder, shooting at an occupied building, and possession of a firearm by a felon. He argues the trial court committed instructional error when it deviated from the statutory definition of reasonable doubt and failed to instruct the jury on a lesser included offense. He also contends his trial counsel was ineffective for failing to object to a statement made by the prosecutor during closing argument.

We affirm.

## I.
## BACKGROUND

On November 17, 2019, Salabert went to the Las Palomas Bar (bar) in Los Angeles. He left after being "very rude" and "demanding." He returned to the bar about 30 minutes later with his neighbor, Jonathan Guerrero (Guerrero). Salabert wanted to order beers for himself and Guerrero, but Guerrero did not have identification and unsuccessfully attempted to use Salabert's. A waitress and Hector M. (Hector) told the men to leave. Salabert and Guerrero responded with expletives and threats.

On his way out of the bar, Salabert bumped into Alejandro Bautista Coronado (Coronado). Coronado said, " 'Hey, watch out.' " Hector later saw Salabert, Guerrero, and Coronado "getting into it" outside of the bar. Salabert threatened Coronado that he was going to be sorry. Salabert took out a gun and started firing. Hector was shot in the leg. Coronado was shot in the chest and abdomen. The abdomen wound was fatal.

The jury found Salabert guilty of first degree murder (Pen. Code, § 187, subd. (a)),[1] deliberate and premeditated attempted murder (§§ 664, 187, subd. (a)), shooting at an occupied building (§ 246), and possession of a firearm by a felon (§ 29800, subd. (a)(1)).  On the murder and attempted murder verdict, the jury found true that Salabert personally and intentionally discharged a firearm causing great bodily injury or death. (§ 12022.53, subd. (d).)  As to shooting at an occupied building, the jury found true that Salabert personally and intentionally discharged a firearm.  (§ 12022.53, subd. (c).)  On the attempted murder and shooting at an occupied building, the jury found true allegations that the crimes involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness; and that Salabert was armed with or used a weapon.  (Cal. Rules of Court, rule 4.421(a)(1)-(2).)

Salabert was sentenced to a total term of 84 years to life in prison.  His appeal is timely.

## II.
## DISCUSSION
### A.  Instructional Error on Reasonable Doubt

During voir dire, the trial court told prospective jurors: "The legal definition of guilt beyond a reasonable doubt is proof that leaves you with an abiding conviction of the truth of the charge. . . .  What is an abiding conviction?  A conviction is a strongly held belief.  What [does it] mean to be abiding?  Abiding means lasting.  It is so strong it stays with you forever.  So . . . to return a verdict of guilty, you must feel so comfortable, so certain

---

[1]     All further statutory references are to the Penal Code.

that you would reach the same decision 10 minutes after the verdict to 10 years after the verdict, and unless you feel that strong and that certain, you must return a verdict of not guilty."

Salabert contends these remarks "significantly misstated and undermined the beyond a reasonable doubt standard" because they deviated from the statutory definition of reasonable doubt. According to Salabert, the court's statements allowed the jurors to find him guilty so long as they were " comfortable with their decision for at least 10 minutes after the verdict, but not necessarily more than 10 years after the verdict[.]" We review this claim of instructional error de novo (*People v. Mitchell* (2019) 7 Cal.5th 561, 579), "evaluating whether the jury could have applied the challenged instruction in an impermissible manner. [Citation.]" (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 790.)[2]

The trial court did not err. Having just told the jury that "guilt beyond a reasonable doubt is proof that leaves you with an abiding conviction of the truth of the charge" and that an abiding conviction "is so strong it stays with you forever[,]" no reasonable juror could have interpreted the statement that "to return a verdict of guilty, you must feel so comfortable, so certain that you would reach the same decision 10 minutes after the verdict to 10

_____

[2]     The People argue that Salabert forfeited his claim of instructional error by failing to object to the trial court's statements. Although the failure to object to an instruction generally forfeits the issue on appeal (see *People v. Lee* (2011) 51 Cal.4th 620, 638), that rule does not apply here. Salabert's "claim that the instruction is not legally correct and therefore violates his right to due process of law 'is not of the type that must be preserved by objection.' [Citations.]" (*People v. Hin* (2025) 17 Cal.5th 401, 492.)

4

years after the verdict" as diluting the burden of proof. (See *People v. Gonzales* (2011) 51 Cal.4th 894, 940 ["It is fundamental that jurors are presumed to be intelligent and capable of understanding and applying the court's instructions"].) Nor did the court's statements permit the jurors to find Salabert guilty, even if they thought they would lack confidence in their decision after 10 years. (See *People v. Stone* (2008) 160 Cal.App.4th 323, 331 ["[A] jury instruction cannot be judged on the basis of one or two phrases plucked out of context"].)

The trial court's comments about the reasonable doubt standard are markedly different from those found to be improper in *People v. Johnson* (2004) 119 Cal.App.4th 976. In that case, the trial court's comments during voir dire "authorized the prospective jurors to find [the defendant] guilty even if they were to have 'some doubt' about his guilt and characterized a juror who renders a guilty verdict with 'no doubt' about his guilt as 'brain dead[.]' " (*Id.* at p. 980; see also *People v. Johnson* (2004) 115 Cal.App.4th 1169, 1171–1172 [reversal required where trial court suggested that the reasonable doubt standard was akin to the deliberative process of those planning vacations and getting on airplanes].)

Moreover, a judge's comments while conducting voir dire " '[are] not intended to be, and [are] not, a substitute for full instructions at the end of trial.' [Citation.]" (*People v. Seaton* (2001) 26 Cal.4th 598, 636.) Accordingly, we treat the trial court's comments during voir dire as part of, and in the context of, the complete instructions given to the jury. (See *People v. Holt* (1997) 15 Cal.4th 619, 677 ["Whether instructions are correct and adequate is determined by consideration of the entire charge to the jury"].)

5

After both sides had rested, the trial court instructed the jury with CALCRIM No. 220, which "describe[d] the presumption of innocence and the requirement of proof beyond a reasonable doubt, and provide[d] the legislatively approved definition of reasonable doubt" set forth in section 1096. (*People v. Aranda* (2012) 55 Cal.4th 342, 353 (*Aranda*).)[3] By doing so, the "court satisfie[d] its statutory obligation to instruct on these principles . . . ." (*Aranda, supra,* 55 Cal.4th at p. 353.) The statements made by the court during voir dire did not conflict with or undermine its CALCRIM No. 220 instruction.

## B. Failure to Instruct on Lesser Included Offense

Salabert next argues that the trial court erred by failing to instruct the jury, sua sponte, on grossly negligent discharge of a firearm (§ 246.3), a lesser included offense of shooting at an occupied building (§ 246).

A trial court must instruct on a lesser included offense when there is substantial evidence that a defendant is guilty only of the lesser offense. (*People v. Vargas* (2020) 9 Cal.5th 793, 827.) "The 'substantial evidence requirement is not satisfied by " '*any* evidence . . . no matter how weak,' " but rather by evidence from which a jury . . . could conclude "that the lesser offense, but not

---

[3] As given, CALCRIM No. 220 provides, in part: "A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically tell you otherwise. [¶] Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt."

6

the greater, was committed." ' [Citation.]" (*People v. Nelson* (2016) 1 Cal.5th 513, 538.) We review de novo "the failure by the trial court to instruct on an assertedly lesser included offense. [Citation.]" (*People v. Cole* (2004) 33 Cal.4th 1158, 1218.)

Grossly negligent discharge of a firearm (§ 246.3) is a lesser included offense of shooting at an occupied building (§ 246). (*People v. Ramirez* (2009) 45 Cal.4th 980, 983 (*Ramirez*).) "Both offenses require that the defendant willfully fire a gun. Although the mens rea requirements are somewhat differently described, both are general intent crimes. The high probability of human death or personal injury in section 246 is similar to, although greater than, the formulation of likelihood in section 246.3[, subdivision (a).]" (*Ramirez, supra*, 45 Cal.4th at p. 990.) The difference between the crimes is that shooting at an occupied building requires that the target—that is, the occupied building— be within the defendant's firing range. (*People v. Bell* (2019) 7 Cal.5th 70, 108 (*Bell*); *Ramirez, supra*, 45 Cal.4th at p. 990; *People v. Overman* (2005) 126 Cal.App.4th 1344, 1362.)

Thus, to find Salabert guilty of grossly negligent discharge of a firearm, but not shooting at an occupied building, "the jury would have had to find that [Salabert's] shots were not aimed at or ' "in close proximity to" ' " the occupied building. (*Bell, supra*, 7 Cal.5th at p. 109.) The jury could not have made such a finding. As Salabert concedes, "the evidence presented at trial showed that [Salabert] fired a gun directly at two people who were standing outside of a building." A detective testified that the firearm that ejected the "cartridge casing was fired somewhere near or at the Las Palomas Bar[.]" The record contains no substantial evidence that Salabert "fired aimlessly or into the air." (*Bell, supra*, 7 Cal.5th at p. 110; see also *Ramirez*,

*supra*, 45 Cal.4th at p. 987 ["The bill enacting section 246.3 was introduced in response to the phenomenon of celebratory gunfire"].)

Because "[t]here was no substantial evidence that [Salabert] was guilty only of a grossly negligent firearm discharge[,] . . . [the trial] court had no sua sponte duty to instruct on this lesser offense. [Citation.]" (*Bell*, *supra*, 7 Cal.5th at p. 110.)

## C. Ineffective Assistance of Counsel

Finally, Salabert claims that his trial counsel was ineffective for failing to object to the following statements made by the prosecutor during closing argument: "Mr. Salabert was presumed innocent until yesterday when I and the defense rested. He's not presumed innocent anymore. You've heard all of the evidence. You have seen all the testimony. You've seen the videos. You heard the D.N.A. You heard the coroner. You heard Hector, Hector who was present there during the actual shooting. This evidence only has one reasonable conclusion, that he's guilty of murder. He's not innocent anymore. The people have proved their case."

To establish ineffective assistance of counsel, a defendant must show that his attorney's performance "fell below an objective standard of reasonableness under prevailing professional norms" and resulting prejudice. (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) "Unless a defendant establishes the contrary, we shall presume that 'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.' [Citation.] If the record 'sheds no light on why counsel acted or failed to act in the manner challenged,' an

appellate claim of ineffective assistance of counsel must be rejected 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' [Citations.]" (*People v. Ledesma* (2006) 39 Cal.4th 641, 746.)

Here, "the prosecutor . . . simply argued the jury should return a verdict in [the People's] favor based on the state of the evidence presented." (*People v. Booker* (2011) 51 Cal.4th 141, 185 (*Booker*).) Competent defense counsel could reasonably decide that an objection would be futile and only serve to bolster the significance of the prosecutor's comments in the eyes of the jury. (See *People v. Stewart* (2004) 33 Cal.4th 425, 509 [rejecting claim of ineffective assistance of counsel for failing to object to alleged prosecutorial misconduct where "reasonable counsel may well have determined that an objection would be unwise, either because the challenged conduct was not improper or because an objection (and possibly an admonition as well) likely would have served to highlight matter that might be unfavorable to [the] defendant"].)

In reaching this strategic decision, trial counsel's performance aligned with cases, including those from the California Supreme Court, that have rejected claims of prosecutorial misconduct arising from remarks similar to those made here. (See, e.g., *Booker*, *supra*, 51 Cal.4th at pp. 183–186 [prosecutor told jury that the presumption of innocence " 'isn't an automatic thing forever' " and " 'vanishes' " once the evidence convinces the jury otherwise]; *People v. Panah* (2005) 35 Cal.4th 395, 462–463 [prosecutor argued that "the prosecution's evidence had 'stripped away' [the] defendant's presumption of innocence"]; *People v. Romo* (2016) 248 Cal.App.4th 682, 690–693 [prosecutor

told jury " 'once the evidence proved to you beyond a reasonable doubt that [defendant] committed the crime, there's no presumption of innocence' "], italics omitted; *People v. Goldberg* (1984) 161 Cal.App.3d 170, 189 [prosecutor told jury that " 'once the evidence is complete' " and the case had been proven beyond a reasonable doubt, " '[t]here is no more presumption of innocence' "], italics omitted; but see *People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1407–1409 [although harmless, prosecutor misstated the law by telling jury that the presumption of innocence was " 'over' " and that the defendant had " 'gotten his fair trial' "].)

Salabert has not established that his trial counsel provided inadequate representation for failing to object. (See *People v. Price* (1991) 1 Cal.4th 324, 387 ["Counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile"].)

### III.
### DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

                                        SIGGINS, J.*

We concur:


CHAVEZ, Acting P. J.


RICHARDSON, J.

---

\*      Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.